IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROBERT G. HUBBARD, JR., <br><br> Plaintiff, <br><br> vs. <br><br> JAY C. SHEFFIELD, Justice of the Peace; JOSEPH CIK, Deputy County Attorney; LT. ROGER GUCHES; DEPUTY TRAVIS SMITH; SHERIFF ROBY BOWE; CAROL RAMOS; LINCOLN COUNTY MONTANA; DEPUTY SCOTT REBO; JOHN DOES 1-10; and JANE DOES 1-10, <br><br> Defendants. | CV 12–36–M–JCL <br><br><br> ORDER |

Before the Court are separate Fed. R. Civ. P. 56 motions for summary judgment filed by Defendants Joseph Cik and Jay Sheffield. Defendant Cik moves for summary judgment dismissing the claims Plaintiff Robert Hubbard advances against him on the ground that he is protected against liability under the doctrine of prosecutorial immunity. Defendant Jay Sheffield similarly moves for summary judgment dismissing the claims Hubbard advances against him on the ground that

he is entitled to judicial immunity.   For the reasons stated, the Court concludes

Cik and Sheffield's motions are properly granted.

## I.  BACKGROUND

This action arises from Hubbard's experiences with the criminal justice

system in Lincoln County, Montana where he lived with his children for a period

of time.  In July, 2010, Hubbard was arrested for disorderly conduct.  Following a

jury trial before Defendant Jay Sheffield, Lincoln County Justice of the Peace,

Hubbard was convicted of the charge, and Sheffield imposed sentence against

Hubbard.  While Hubbard's appeal of that conviction was pending, Hubbard

entered a plea agreement with Defendant Joseph Cik, Deputy Lincoln County

Attorney — a plea agreement that reduced the sentence Sheffield had imposed.

Displeased with the plea agreement, Sheffield expressed his displeasure to Cik.

Cik, in turn, told Hubbard of Sheffield's displeasure with the plea agreement.

Hubbard alleges that Sheffield thereafter had a vendetta against him, and that Cik,

Sheffield, and other Defendants conspired to target Hubbard for further adverse

consequences within the criminal justice system.

On March 20, 2011, Hubbard and his teenage son, Christian, got involved in

a dispute which escalated into a physical confrontation at the family's residence.

Christian called the police, and Defendants Roger Guches and Travis Smith,

Lincoln County law enforcement officers, responded to the residence. Guches and Smith interviewed Hubbard, Christian, and Hubbard's teenage daughter, Shayna. Smith arrested Hubbard for the offense of family member assault in violation of Mont. Code Ann. § 45-5-206. The officers left Hubbard's children, including a third child who was 9 years old, at the residence.

Hubbard appeared before Sheffield for his arraignment on the criminal charge. Sheffield detained Hubbard and set his bail in the amount of $10,000. Hubbard later posted bail and he was released from custody. As a condition of his release, however, Sheffield prohibited Hubbard from having any contact with Christian and Shayna. Consequently, Christian and Shayna began living with their uncle and were not permitted to live with Hubbard.

Hubbard elected to represent himself with respect to the criminal prosecution against him on the family member assault charge. Hubbard interviewed Smith and Guches about their investigation of the altercation between Hubbard and Christian. Hubbard alleges Guches, Smith and Cik conspired to sustain the prosecution against Hubbard.

Although Hubbard represented himself in defense of the family member assault charge, at one point he sought legal assistance from retained counsel, Scott Hilderman. Hilderman discussed the case with Cik. Hubbard alleges Cik

informed Hilderman that Sheffield was, in essence, prejudiced and biased against Hubbard due to Hubbard's prior disorderly conduct proceedings and the resulting plea agreement.

Hubbard moved to disqualify Sheffield from presiding over the family member assault case. Sheffield ultimately recused himself from the case. Sheffield states that after his recusal he had no further dealings with Hubbard in the criminal justice system. Justice of the Peace Stormy Langston was then assigned to the case.

Hubbard moved to modify the condition of his release prohibiting him from having contact with Christian and Shayna. Cik opposed the motion, and Justice of the Peace Langston denied Hubbard's motion.

Hubbard alleges that during the course of the prosecution Cik sought to bribe Christian with financial incentives to convince Christian to testify against Hubbard.

Hubbard proceeded to trial on the family member assault charge. Following the trial the jury found Hubbard not guilty.

He also alleges that some time after the trial Cik discussed Hubbard's assault case with numerous people in Libby, and allegedly told members of the

community that Hubbard was a "child abuser."  Hubbard contends Cik's conduct in that regard constituted defamation.

Hubbard advances numerous legal claims for relief against the various Defendants.  Invoking federal question jurisdiction, 28 U.S.C. § 1331, Hubbard asserts claims under 42 U.S.C. § 1983 for violations of his rights under the United States Constitution.  And invoking supplemental jurisdiction, 28 U.S.C. § 1367, Hubbard advances claims under Montana law.  He seeks both compensatory and punitive damages.

## II.  APPLICABLE LAW - SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

A party moving for summary judgment who does not have the burden of persuasion at trial must produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his

burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9ᵗʰ Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  A party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id*.  The party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party must support an assertion of fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations [...], admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  *See also* L.R. 56.1(a)(2) and (b)(2).  While the material presented in summary judgment proceedings "does

not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence[]" later at trial. *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). *See also Celotex Corp.*, 477 U.S. at 324.

To be admissible, any specific item of documentary evidence must be authenticated by other evidence sufficient "to support a finding that the matter in question is what its proponent claims." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Evidentiary materials or exhibits may be "authenticated by affidavits or declarations of persons with personal knowledge through whom they could be introduced at trial." *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). *See also Orr*, 285 F.3d at 774 (adding that authentication may occur by any manner permitted by Fed. R. Evid. 901(b) or 902). Absent proper authentication, however, a court may not consider the exhibit in ruling on a summary judgment motion. *Orr*, 285 F.3d at 773 (citing cases).

Where a party fails to address another party's factual assertion the court may consider the fact "undisputed for purposes of the motion[, ... and] grant summary judgment if the motion and supporting material — including the facts considered undisputed — show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2) and (3).

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), abrogated on other grounds as noted in *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

Finally, because Hubbard is proceeding pro se the court must construe his documents liberally and give them "the benefit of any doubt." *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

## III.    DISCUSSION

### A.  Joseph Cik

#### 1.    Hubbard's Federal Claims Against Cik

42 U.S.C. § 1983 permits a plaintiff to present claims under federal law against a state official or employee if the plaintiff can establish that person was acting under color of state law and deprived the plaintiff of a federal right. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Hubbard alleges all Defendants, as state actors, violated several of the rights secured him by the United States Constitution.

Specifically, Hubbard seeks to impose liability upon Cik under 42 U.S.C. § 1983 for allegedly violating Hubbard's constitutional rights in the prosecution of both the disorderly conduct charge in 2010, and the family member assault charge in 2011. Cik moves for summary judgment dismissing Hubbard's § 1983 federal claims on the ground he is entitled to prosecutorial immunity against liability.

Prosecutors are entitled to absolute immunity from liability under 42 U.S.C. § 1983 when they are "performing the traditional functions of an advocate" for the State. *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997); and *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993). In other words, prosecutors are immune from liability "when they engage in prosecutorial acts, which the Supreme Court has defined as those activities 'intimately associated with the judicial phase of the criminal process.'" *Lacey v. Maricopa County*, 649 F.3d 1118, 1127 (9th Cir. 2011) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)). The immunity applies to "actions that are connected with the prosecutor's role in judicial proceedings[.]" *Burns v. Reed*, 500 U.S. 478, 494 (1991). Prosecutorial conduct that qualifies for immunity protection also includes conduct in "prepar[ing] to initiate a judicial proceeding[.]" *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citing *Burns*, 500 U.S. at 492). Thus, a prosecutor even enjoys absolute immunity "from a suit alleging that he maliciously initiated a prosecution, used perjured testimony

at trial, or suppressed material evidence at trial." *Genzler v. Longanbach*, 410

F.3d 630, 637 (9th Cir. 2005) (citing *Imbler*, 424 U.S. at 430).  In contrast,

prosecutors are not entitled to absolute immunity and are entitled only to qualified

immunity when they perform investigative functions normally performed by a

detective or a police officer.  *Buckley*, 509 U.S. at 273.  A prosecutor seeking

absolute immunity "bears the burden of showing that such immunity is justified

for the function in question."  *Genzler*, 410 F.3d at 636 (quoting *Burns*, 500 U.S.

at 486).

In moving for summary judgment, Cik presents evidence establishing that

his role in prosecuting Hubbard for disorderly conduct in 2010, and for family

member assault in 2011 was one of advocacy — i.e. a role intimately associated

with the judicial phase of the criminal process.  Therefore, he has satisfied his

initial burden on summary judgment establishing he is entitled to absolute

immunity.

In response, Hubbard asserts several matters regarding Cik's conduct which

Hubbard believes disqualify him from claiming prosecutorial immunity.  Hubbard

relies, in part, on the allegations of his Amended Complaint and the responses set

forth in Defendants' First Amended Answer to the Amended Complaint to suggest

Cik was involved in a conspiracy against Hubbard.  Defendants' pleading,

however, does not admit a conspiracy existed. Furthermore, in opposing summary judgment, Hubbard may not rely upon the mere allegations or denials in the parties' pleadings and must, instead, identify specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Hubbard does not identify any other admissible evidence raising a genuine issue of material fact suggesting Cik conspired with any person to prosecute and convict Hubbard for any criminal offense.

Hubbard submits his affidavit in which he describes a phone conversation he purportedly had with Cik after he plead guilty to disorderly conduct. Hubbard states that Cik told him that: (1) Sheffield was displeased with Cik's conduct in offering Hubbard the plea agreement, (2) Cik needed to do what Sheffield directed him to do, (3) Sheffield was upset with Hubbard, and (4) Sheffield said he planned to target Hubbard and impose adverse consequences against Hubbard because of the plea agreement.

Hubbard's affidavit testimony, however, is insufficient to establish any facts regarding Cik and Sheffield's alleged plans. Hubbard, through his affidavit, attempts to offer statements made by Cik and Sheffield to prove the truth of the matters asserted in their statements, i.e. that Sheffield targeted Hubbard for

adverse consequences, and that Cik planned to assist Sheffield in that regard. Thus, the testimony is inadmissible hearsay. Fed. R. Evid. 801 and 802.

Cik does not dispute that Sheffield was displeased with his conduct in reaching a plea agreement with Hubbard in the disorderly conduct prosecution. Cik also does not dispute that he informed others, including Hubbard's former attorney, that Sheffield was displeased with Cik. But those events do not constitute acts or omissions which expose Cik to liability to Hubbard.

As further evidence of Cik's alleged effort to assist Sheffield, Hubbard states that on March 11, 2011, Cik was with Lincoln County Sheriff Deputy Brad Dodson when Dodson performed a traffic stop on Hubbard allegedly for no reason. Hubbard states Cik "smirked" at Hubbard to let Hubbard know Cik was "after" him. Hubbard's affidavit testimony in this regard, however, is nothing more than speculation as to the reasons for Cik's conduct in accompanying Dodson and "smirking" at Hubbard. Unsubstantiated speculation as to what is asserted as a "fact" is insufficient to establish a genuine issue of material fact to preclude summary judgment. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). Conclusory and speculative testimony in an affidavit is insufficient to defeat summary judgment. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1252 (9th Cir. 2010).

Hubbard also presents affidavit testimony from Christian and Shayna relative to Cik's conduct. They each state that they provided Cik with information suggesting Hubbard had not committed the offense of family member assault. But that testimony does not establish that Cik engaged in any conduct that exposes him to liability. Cik asserts that despite the information from Christian and Shayna probable cause existed to prosecute Hubbard based on Guches and Smith's investigation, and based on Christian and Shayna's prior credible statements given at the scene of the alleged assault.

Christian and Shayna each suggest in their affidavits that when Cik was preparing them for trial, he told them to falsely testify at Hubbard's family member assault trial that Christian was the victim, not the aggressor. But a prosecutor's conduct in interviewing and preparing a witness for trial after charges have been filed is protected by prosecutorial immunity because that conduct and function is intimately associated with the judicial phase of the criminal process. *Genzler*, 410 F.3d at 638 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (distinguishing between an advocate's role in interviewing witnesses in preparation for trial, and investigating and corroborating facts to build a case against a suspect, noting that the former is protected by immunity and the latter is not)). And when a prosecutor is performing the quasi-judicial advocacy function

of interviewing and preparing a witness for trial, the prosecutor is protected by absolute immunity even if he or she is instructing the witness to lie. *Genzler*, 410 F.3d at 639 (citing *Imbler*, 424 U.S. at 430, 431 n.33).[1] At the time Cik allegedly directed Shayna and Christian to testify falsely, Hubbard had been arrested, charged with family member assault, arraigned on the charges, and Justice of the Peace Jay Sheffield had concluded probable cause existed to sustain the prosecution against Hubbard. Thus, the criminal proceedings against Hubbard had begun, and Christian and Shayna's affidavits establish Cik's alleged conduct was committed as an advocate preparing them for their testimony to be presented at trial, and not as an investigator acquiring evidence against Hubbard.

Hubbard further attempts to characterize Cik as an "investigator" in the prosecution against Hubbard for family member assault on the basis that Cik was

---

[1]The distinction focuses on whether, on the one hand, the prosecutor is functioning like a police detective conducting an investigation to collect or acquire evidence and information to establish probable cause, or, on the other hand, whether the prosecutor's conduct in interviewing and preparing a witness is advocacy-related and is associated with the judicial process. *Genzler*, 410 F.3d at 638. Generally speaking, once charges have been filed and the criminal proceedings have begun, a prosecutor's conduct in organizing, evaluating, and marshaling evidence, and in preparing a witness's testimony for trial are quasi-judicial functions entitling the prosecutor to absolute immunity. *Id*. at 639 (citation omitted). The timing of a prosecutor's conduct is relevant in assessing whether the prosecutor was functioning as an advocate or as an investigator. *Id*. at 640 (citations omitted).

allegedly the only person to "investigate" the case following Guches and Smith's

initial on-the-scene investigation. Hubbard accurately asserts that Prosecutorial

immunity does not apply to a prosecutor's conduct in serving as an investigator

and conducting investigative work that would ordinarily be performed by a

detective to develop facts to determine whether a suspect is guilty of an offense.

*Buckley*, 509 U.S. at 275-76. But Hubbard's assertion that Cik served as an

investigator is conclusory and unsubstantiated — he does not identify any facts

indicating that Cik actually performed any investigative functions to develop facts

in support of the prosecution against Hubbard. Rather, Hubbard's assertion

suggests only that, after the on-the-scene investigation conducted by Guches and

Smith, it was Cik's responsibility to prosecute the criminal charges. That

prosecutorial function is clearly protected by prosecutorial immunity.

Hubbard next argues that Cik served as a "complaining witness" with

respect to matters regarding Hubbard's attempt to regain custody of Christian and

Shayna, thereby shedding his absolute prosecutorial immunity. Hubbard states he

filed a motion in his criminal case seeking to allow Christian and Shayna to return

to his home. Cik filed a brief in response to the motion in which Cik represented

to the court that Christian and Shayna were living in an approved home, were

scared of Hubbard, and did not want to return home. But Hubbard's attempt to characterize Cik's conduct as that of a "complaining witness" is misguided.

A prosecutor becomes a "complaining witness" and loses prosecutorial immunity when the prosecutor "certif[ies, under penalty of perjury,] that the facts alleged within an affidavit are true" for the purpose of filing a criminal complaint and obtaining an arrest warrant based on probable cause. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997). Conduct in serving as a witness presenting sworn testimony as to facts "is the function of the witness, not of the" prosecutor. *Id.* 522 U.S. at 130.

Cik's conduct in opposing Hubbard's motion to gain custody of his children does not make him a complaining witness. Hubbard relies only upon statements made by Cik in a brief he filed with the court in response to Hubbard's motion. Hubbard does not identify any evidence establishing that Cik swore to the truth of, or certified the truth of, any fact presented to the court. Cik did not serve as a witness to present his own sworn testimony as to any facts. Rather, Cik merely presented evidence to the court which is consistent with his role as an advocate. A prosecutor is entitled to immunity when the prosecutor is acting as "an officer of the court[,]" or as an "advocate for the State," and is merely presenting evidence

and analysis to the court as opposed to presenting sworn testimony. *Lacey v. Maricopa County*, 693 F.3d 896, 912-13 (9th Cir. 2012) (citations omitted).

Hubbard also alleges Cik is liable under section 1983 for violation of Hubbard's civil rights because "Cik offered to pay for Christian's college, in exchange for [Christian's] fabricated testimony." (Dkt. 65 at 13 of 28.) Christian states in his affidavit that "after the trial," and after Hubbard was found not guilty, Cik "offered to pay for my college[.]" Aff. of Christian Hubbard at ¶ 15.

Cik explains in his affidavit testimony that nine months after Hubbard was acquitted of the family member assault charge Cik offered to pay a $200 deposit to secure housing for Christian at the Montana State University because Christian was experiencing financial difficulties. Cik, however, later suffered a physical injury and he was then unable to pay the $200 deposit as he had previously offered. Cik affirms in his affidavit that he never offered to pay Christian's college tuition as Hubbard alleges.

Christian and Cik's testimony confirms that although Cik had offered to pay a university housing deposit for Christian, he did so long after Hubbard's prosecution for family member assault had concluded. Thus, Cik's offer could not have been for the purpose of bribing Christian to provide fabricated testimony at

Hubbard's criminal trial which occurred before Cik's offer was made.  Cik's offer of financial assistance does not support any claim for liability against Cik.

Every other evidentiary matter and fact that Hubbard identifies in support of his claims against Cik describes or pertains to conduct in which Cik engaged in connection with Cik's role as a prosecutor in the judicial criminal proceedings against Hubbard.  The facts on which Hubbard relies to impose liability upon Cik involve Cik's prosecutorial acts intimately associated with the judicial phase of the criminal process.  Therefore, Cik is entitled to prosecutorial immunity, and to judgment as a matter of law on Hubbard's federal claims.

## 2. Hubbard's Claims Under Montana Law Against Cik

### a. Cik's Prosecutorial Conduct

Invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a), Hubbard advances numerous claims under Montana law.  In exercising supplemental jurisdiction over state law claims, the Court must apply state substantive law to the same extent as if it were exercising diversity jurisdiction. *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).

In moving for summary judgment with respect to Hubbard's claims under Montana law, Cik asserts he is similarly protected from liability under the doctrine of prosecutorial immunity as recognized under Montana law.  The Court agrees.

18

Under Montana law, prosecutorial immunity protects "participants in the judicial process whose functions are closely associated with those of judicial officers[,]" and whose actions are taken in their quasi judicial capacities. *Rosenthal v. County of Madison*, 170 P.3d 493, 499 (Mont. 2007) (citation omitted). Thus, prosecutors are entitled to absolute immunity "when their judgments and conduct are functionally comparable to those implemented by judges." *Id*. In determining whether a prosecutor's actions were taken in his or her prosecutorial capacity, the Montana Supreme Court follows a functional approach similar to the that of the United States Supreme Court. *Kelman v. Losleben*, 894 P.2d 955, 957 (Mont. 1995) (citing *Imbler v. Pachtman,* 424 U.S. 409 (1976)). Under the functional approach, a prosecutor's conduct in filing and maintaining criminal charges falls within the scope of those duties that entitle a prosecutor to absolute immunity from civil liability, regardless of any negligence. *Rosenthal*, 170 P.3d at 499 (citation omitted).

As discussed above, Hubbard's claims and the evidence he presented against Cik pertain to his conduct in connection with prosecuting Hubbard for criminal offenses — conduct that was "intimately associated with the judicial phase of the criminal process." *Imbler,* 424 U.S. at 430. For the reasons discussed above, Hubbard did not meet his burden in opposing summary judgment to

19

demonstrate Cik is not entitled to prosecutorial immunity. Consequently,

Hubbard's claims advanced under Montana law against Cik predicated upon Cik's

conduct in prosecuting Hubbard should be dismissed.

Additionally, to the extent Hubbard contends Lincoln County, as Cik's

employer, is vicariously liable for Cik's conduct, those claims are also subject to

dismissal. Prosecutorial immunity extends to protect against the vicarious liability

of the governmental entity that employs the prosecutor. *Rahrer v. Board of*

*Psychologists*, 993 P.2d 680, 682 (Mont. 2000) (citing *State ex rel Department of*

*Justice v. District Court*, 560 P.2d 1328, 1330 (Mont. 2000)).

### b.     Cik's Non-Prosecutorial Conduct

In response to Cik's summary judgment motion, Hubbard advances certain

allegations against Cik for conduct he allegedly committed outside of his role as a

prosecutor. Hubbard alleges that Cik is liable for slander and defamation for

stating to members of the community that Hubbard is a "child abuser." In support

of this assertion, both Hubbard and Shayna state in their affidavits that certain

individuals told them that Cik had stated Hubbard was a "child abuser." This

testimonial evidence, however, constitutes hearsay statements made by third

parties offered to prove that Cik made the "child abuser" statements. The

testimony is inadmissible hearsay under Fed. R. Evid. 801 & 802. Thus, Hubbard

has failed to identify any evidence in the record raising a genuine issue of material fact supporting Cik's liability for defamation or slander.

Hubbard does not present any further argument, and he does not identify any other evidence, in support of any other legal claims pled against Cik. Nonetheless, to the extent Hubbard maintains other legal claims against Cik advanced under Montana law, Cik argues he is entitled to immunity from individual liability under the provisions of Mont. Code Ann. § 2-9-305(5). Cik is correct.

Section 2-9-305 provides governmental employees with immunity against state law claims as follows:

> In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, unless [certain exclusions from immunity are applicable.]

Mont. Code Ann. § 2-9-305(5).

Consistent with section 2-9-305(5), the Montana Supreme Court has confirmed as follows:

> [W]here an action is brought against a county based on actionable conduct by an employee, the employee is immune from individual liability for the conduct if the county acknowledges that the conduct arose out of the course and scope of the employee's official duties.

*Kenyon v. Stillwater County*, 835 P.2d 742, 745 (Mont. 1992), overruled on other grounds by *Heiat v. Eastern Montana College*, 912 P.2d 787, 793 (Mont. 1996). *See also Germann v. Stephens*, 137 P.3d 545, 553 (Mont. 2006).

Lincoln County acknowledges that Hubbard's state law claims against Cik are based upon conduct taken by Cik in the course and scope of his employment. Dkt. 50 at ¶ 131. Consequently, Cik is immune under Mont. Code Ann. § 2-9-305(5) from individual liability for Hubbard's remaining state law claims, and Cik's motion should be granted in this respect.

## B. Jay Sheffield

Hubbard seeks to impose liability upon Sheffield under both 42 U.S.C. § 1983 and Montana law for his conduct relative to Hubbard's proceedings in the Lincoln County criminal justice system allegedly committed in violation of Hubbard's constitutional rights. Sheffield is a Lincoln County Justice of the Peace, and he presided over Hubbard's disorderly conduct case and part of Hubbard's family member assault case prior to his recusal. Dkt. 50-10 at ¶¶ 1-2. Sheffield moves for summary judgment dismissing Hubbard's claims on the ground he is entitled to judicial immunity against liability. The Court agrees.

Judges are "absolutely immune for judicial acts." *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003). *See also Mireles v.*

*Waco*, 502 U.S. 9, 11-12 (1991). The doctrine of judicial immunity provides an

immunity from suit, not just from an assessment of damages. *Mireles*, 502 U.S. at

11. Judicial immunity "reflects the long-standing 'general principle of the highest

importance to the proper administration of justice that a judicial officer, in

exercising the authority vested in him, shall be free to act upon his own

convictions, without apprehension of personal consequences to himself.'" *Olsen v.*

*Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004) (quoting *Bradley v.*

*Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)).

Judges are entitled to immunity "for their judicial acts, even when such acts

are in excess of their jurisdiction, and are alleged to have been done maliciously or

corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (quoting *Bradley*, 80

U.S. at 351). *See also Mireles,* 502 U.S. at 11 ("judicial immunity is not overcome

by allegations of bad faith or malice"). The necessary inquiry is whether the judge

had jurisdiction over the subject matter of the action pending before the judge.

*Stump*, 435 U.S. at 356. Judicial immunity is broadly construed, and a "judge will

not be deprived of immunity because the action he took was in error, was done

maliciously, or was in excess of his authority; rather, he will be subject to liability

only when he has acted in the 'clear absence of all jurisdiction.'" *Stump*, 435 U.S.

at 356-57 (quoting *Bradley*, 80 U.S. at 351). Even "grave procedural errors" do

not deprive a judge of immunity. *Ashelman v. Page*, 793 F.2d 1072, 1077 (9th Cir. 1986) (citing *Stump*, 435 U.S. at 359)).

Consequently, exceptions to judicial immunity are recognized only in two limited situations: (1) where the judge's actions were not taken in the judge's judicial capacity (*Mireles*, 502 U.S. at 11 ("nonjudicial actions")), and (2) where the judge has acted "in the 'clear absence of all jurisdiction[.]'" *Sadoski v. Mosley*, 435 F.3d 1076, 1079 (9th Cir. 2006) (quoting *Stump*, 435 U.S. at 356-57 and *Bradley*, 80 U.S. at 351). "A clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction[,]" as distinguished from acts committed merely in excess of jurisdiction. *Miller v. Davis*, 521 F.3d 1142, 1147 (9th Cir. 2008) (citations omitted). Where "jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case[.]" *Stump*, 435 U.S. at 356 n.6 (quoting *Bradley*, 80 U.S. at 351-52).

Consistent with federal law, Montana law also provides that a judicial officer is immune from suit "arising from the lawful discharge of an official duty associated with the judicial actions of the court." Mont. Code Ann. § 2-9-112(2); *Silverstrone v. Park County*, 170 P.3d 950, 953 (Mont. 2007). Judges enjoy

24

"absolute immunity for judicial acts." *Mead v. McKittrick*, 727 P.2d 517, 518 (Mont. 1986). Additionally, "[t]he state and other governmental units are immune from suit for acts or omissions of the judiciary." Mont. Code Ann. § 2-9-112(1). Thus, the judicial immunity to which a justice of the peace is entitled extends to immunize the county governmental entity with which the justice is employed. *Silverstrone v. Park County*, 170 P.3d 950, 954 (Mont. 2007).

In response to Sheffield's summary judgment motion, Hubbard raises several specific issues in his brief which he contends subject Sheffield to liability and establish that the doctrine of judicial immunity is inapplicable to Hubbard's liability claims.[2] For the reasons discussed, the Court concludes Hubbard's mere allegations and assertions in his brief are wholly insufficient to avoid the application of judicial immunity in this case.

---

[2] The Court will rely upon, and focus on the issues Hubbard identifies in his brief. In reviewing a motion for summary judgment, the district court is not obligated to "scour the record in search of a genuine issue of material fact. [The district court] may rely on the nonmoving party to identify with reasonable particularity the evidence [in the record] that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted). The court is not obligated "to undertake a cumbersome review of the record" on behalf of the non-moving party. *Simmons v. Navajo County, Arizona*, 609 F.3d 1011, 1017 (9th Cir. 2010). The Court further notes Hubbard has submitted various irrelevant or inadmissible evidentiary materials, such as recorded interviews of certain individuals, which are inadequate to oppose summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The statements made in the recorded interviews are inadmissible hearsay. Fed. R. Evid. 801 and 802.

Some of the issues Hubbard identifies are actions taken by Sheffield in his judicial capacity. Hubbard states in his affidavit that during his appearance before Sheffield on the family member assault charge, Sheffield "lashed out at" Hubbard. Aff. of Hubbard at 7. These facts, however, fall squarely within the doctrine of judicial immunity. A judge's role in presiding over judicial proceedings requires the judge to engage in conduct "normally performed by a judge" with respect to parties who deal "with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Hubbard's assertion merely describes Sheffield's conduct in the court proceedings which qualifies as normal "judicial acts" committed by a judge in his or her judicial capacity.

Hubbard next asserts Sheffield inappropriately imposed an excessive and oppressive bail amount against Hubbard when Hubbard appeared before Sheffield on the family member assault charge. Hubbard also suggests Sheffield improperly prohibited him from having contact with Christian and Shayna. These assertions, however, also fall within the scope of judicial immunity. Sheffield had jurisdiction over the criminal proceedings before him in which Hubbard was involved — he had jurisdiction over the misdemeanor criminal offense of family member assault (Mont. Code Ann. § 45-5-206) as provided in Mont. Code Ann. § 3-10-303(1). A justice of the peace may also impose bail upon a defendant as a

condition of release (Mont. Code Ann. § 46-9-108(1)(j)), and may prohibit a defendant from having contact with any alleged victim. Mont. Code Ann. §§ 45-5-209(1) and 46-9-108(1)(e). Thus, Sheffield had jurisdiction to engage in the conduct of which Hubbard complains, and Sheffield is entitled to judicial immunity for that conduct.

Hubbard raises several other issues in his brief which he contends expose Sheffield to liability based on conduct he purportedly committed in his personal capacity — nonjudicial actions not taken in his judicial capacity — which subject him to liability. For the reasons discussed, however, Hubbard has not presented sufficient evidence to raise any genuine issue of material fact in support of his claims.

Hubbard believes and asserts that Sheffield allegedly conspired with other Defendants in this case to inflict harm on Hubbard based on Sheffield's alleged personal vendetta against Hubbard. Hubbard believes Sheffield's personal vendetta arose when Hubbard entered a plea agreement with respect to his disorderly conduct conviction which reduced the sentence Sheffield imposed against him. Hubbard testifies in his affidavit that he has "information and evidence" to support a finding of a conspiracy and a vendetta against him, but he does not identify what that information and evidence is. Aff. of Hubbard at 3 and

7. Again, the Court is not obligated to scour the record to locate evidence on Hubbard's behalf.

Hubbard also relies on the affidavit testimony of Christian to support his suggestion that Sheffield was involved in a conspiracy against Hubbard. Christian describes an encounter he had with Sheffield. On October 18, 2010, Christian was involved in a single-vehicle rollover near property owned by Sheffield, and Sheffield came to the scene of the accident. Christian states that Sheffield made comments to Christian about Hubbard. Sheffield allegedly stated that Hubbard "had made a big deal out of" the circumstances surrounding Hubbard's disorderly conduct charge, that "it was ridiculous that they have to spend time and resources for such a trivial charge[,]" and that Sheffield "was very unhappy that [Hubbard] was making such a scene of the incident." Aff. of Christian at 3.

Christian's statements in his affidavit are insufficient to raise a genuine issue of material fact as to the existence of a conspiracy in which Sheffield was involved. Although the existence of a conspiracy may reasonably be inferred, a plaintiff must point to specific facts that would support that inference. *Hewitt v. Grabicki*, 794 F.2d 1373, 1382 (1986). Evidence must be presented that would permit a jury to infer that it is more likely than not that a conspiracy existed. *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 903 (9th Cir. 1987). Conclusory

assertions of a conspiracy, unsupported by specific probative facts, are insufficient. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (noting that "summary judgment cannot be defeated by relying solely on conclusory allegations unsupported by" specific facts). A party opposing summary judgment must identify specific facts establishing genuine issues that must be resolved at trial. Vague, conclusory assertions of a conspiracy are insufficient "to suggest any actions [were] taken in furtherance of a purported conspiracy." *Krug v. Imbordino*, 896 F.2d 395, 397 (9th Cir. 1990). Christian's testimony regarding his encounter with Sheffield lacks any facts from which a jury could infer a conspiracy actually existed.

Hubbard nest asserts "Sheffield admits he had a conversation [about Hubbard's plea agreement in the disorderly conduct prosecution] with an attorney not involved" in that case. Dkt. 26 at ¶ 20. Hubbard apparently contends this admission supports his theory that Sheffield had a personal vendetta against him. These innocuous admitted allegations, however, do not give rise to any claim of liability against Sheffield, and also do not advance any assertion of a conspiracy or vendetta.

Hubbard notes that "Sheffield spoke to Mr. Cik regarding his overall job performance" relative to Hubbard's plea agreement in the disorderly conduct

prosecution. Dkt. 26 at ¶ 15. Hubbard apparently suggests Sheffield's conduct in this regard is evidence of Sheffield's bias against Hubbard. The suggested inference, however, is not supported by these facts. Sheffield testifies in his affidavit that he was displeased with Cik's conduct, and was not upset with Hubbard. Dkt. 50-10 at ¶¶ 6-8. Hubbard has not raised a genuine issue of material fact suggesting Sheffield was "out to get" Hubbard.

Hubbard states Sheffield admits he put a "copy of the District Court's order [regarding Hubbard's plea agreement in the disorderly conduct prosecution] on his office door." Dkt. 26 at ¶ 13. This conduct, however, does not at all suggest or support a reasonable inference that Sheffield had a vendetta against Hubbard. Rather, Sheffield explains that he placed the plea agreement order on his door – consistent with his standard practice – as a reminder that he wanted to visit with Cik about the plea agreement. Dkt. 50-10 at ¶ 5.

Hubbard also attempts to link conduct committed by other individuals to Sheffield. Christian testifies in his affidavit that Judge Sheffield's wife, Kathleen Sheffield, and Judge Sheffield's clerk, Robin Schiferl, among others, took Christian to lunch, visited with Christian at school, and gave him money, clothes and cell phones. Aff. of Christian at 14. Christian states he "believes" these actions were taken to influence Christian with respect to both Hubbard's family

member assault case and this civil case commenced by Hubbard. Aff. of Christian at 17. Christian's speculation, however, is legally inadequate to defeat summary judgment. Furthermore, Kathleen Sheffield and Robin Schiferl's conduct as described by Christian cannot be attributable or imputed to Jay Sheffield.

Finally, Hubbard states in his brief that "Sheffield refused to sign the subpoena back in July of 2011" which would have required him to produce his cell phone records at Hubbard's trial. Dkt. 65 at 9. Hubbard is convinced that Sheffield's unexplained refusal demonstrates Sheffield's disdain for Hubbard. Hubbard does not cite to any evidentiary material in the record to substantiate this assertion in his brief. Thus Hubbard's speculative statement in his brief is insufficient to defeat summary judgment.

## IV.    CONCLUSION

Based on the foregoing, Cik is protected from liability under the doctrine of prosecutorial immunity, and Sheffield is immune from liability under the doctrine of judicial immunity, as established under both federal law and Montana law. Cik is also entitled to immunity under Mont. Code Ann. § 2-9-305(5) for his individual liability due to Lincoln County's acknowledgment that all of Cik's actions alleged in Hubbard's Amended Complaint were taken in the course and scope of his employment with Lincoln County.

Finally, Lincoln County, as Sheffield's employing governmental entity, is also immune from liability for Sheffield's conduct under the doctrine of judicial immunity.

Therefore, IT IS HEREBY ORDERED that Cik and Sheffield's summary judgment motions are GRANTED.

DATED this 5th day of August, 2013.

_____
Jeremiah C. Lynch
United States Magistrate Judge