IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROBERT G. HUBBARD, JR., | CV 12–36–M–JCL |
| Plaintiff, | |
| vs. | ORDER |
| JAY C. SHEFFIELD, Justice of the Peace; JOSEPH CIK, Deputy County Attorney; LT. ROGER GUCHES; DEPUTY TRAVIS SMITH; SHERIFF ROBY BOWE; CAROL RAMOS; LINCOLN COUNTY MONTANA; DEPUTY SCOTT REBO; JOHN DOES 1-10; and JANE DOES 1-10, | |
| Defendants. | |

Before the Court is Defendant Carol Ramos's Fed. R. Civ. P. 56 motion for summary judgment. Ramos argues that Plaintiff Robert Hubbard, proceeding pro se, has failed to identify any evidence which would support any federal claim against her under either 42 U.S.C. § 1983 or § 1985(3). Further, Ramos asserts that pursuant to Mont. Code. Ann. § 2-9-305(5) she is immune from liability with respect to Hubbard's claims advanced under Montana law. For the reasons stated, the Court agrees, and Ramos' motion is properly granted.

1

## I.  BACKGROUND

This action arises from Hubbard's experiences with the criminal justice system in Lincoln County, Montana where he lived with his children for a period of time.  Each individual Defendant was involved in different aspects of two separate criminal proceedings against Hubbard.

Hubbard's brush with the criminal justice system began in July, 2010, when he was arrested for disorderly conduct.  Joseph Cik, Deputy Lincoln County Attorney, prosecuted Hubbard on that charge in Justice Court before Jay Sheffield, Lincoln County Justice of the Peace.  Hubbard believes and alleges, however, that as a result of the circumstances of those proceedings – which ended favorable for Hubbard – Sheffield had a vendetta against him, and that Cik, Sheffield, and the other Defendants conspired to target Hubbard for further adverse consequences within the criminal justice system.

On March 20, 2011, Hubbard and his teenage son, Christian, got involved in a dispute which escalated into a physical confrontation at the family's residence. Christian called the police, and Defendants Roger Guches and Travis Smith, Lincoln County law enforcement officers, responded to the residence.  Guches and Smith interviewed Hubbard, Christian, and Hubbard's teenage daughter, Shayna. Smith arrested Hubbard for the offense of family member assault in violation of

Mont. Code Ann. § 45-5-206.  The officers left Hubbard's children, including a third child who was 9 years old, at the residence.

Hubbard appeared before Sheffield for his arraignment on the criminal charge.  Sheffield detained Hubbard and set his bail in the amount of $10,000. Hubbard later posted bail and he was released from custody.  As a condition of his release, however, Sheffield prohibited Hubbard from having any contact with Christian and Shayna.  Consequently, Christian and Shayna began living with their uncle and were not permitted to live with Hubbard.

After Hubbard was released he attempted to get Christian and Shayna out of their uncle's home and placed into a better residential living situation, possibly with Hubbard.  He contacted Defendant Carol Ramos, the Lincoln County Victim/Witness Advocate, for assistance.  Ramos had been assigned to assist Christian and Shayna with their involvement as either victims of, or witnesses to, the altercation between Hubbard and Christian.  Hubbard alleges that when he contacted Ramos she told him Christian and Shayna could not be returned to his home.

Hubbard moved to modify the condition of his release prohibiting him from having contact with Christian and Shayna.  Although Shayna was later allowed to move back home with Hubbard, Hubbard alleges Cik and Ramos convinced

Justice of the Peace Stormy Langston[1] to prohibit Hubbard from taking Christian back into his home.

Upon jury trial on the family member assault charge, Hubbard was found not guilty.

Hubbard advances numerous legal claims for relief against the various Defendants.  Invoking federal question jurisdiction, 28 U.S.C. § 1331, Hubbard asserts claims under 42 U.S.C. § 1983 for violations of his rights under the United States Constitution.  And invoking supplemental jurisdiction, 28 U.S.C. § 1367, Hubbard advances claims under Montana law.  He seeks both compensatory and punitive damages.

## II.    APPLICABLE LAW - SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

---

[1]Sheffield recused himself from Hubbard's family member assault case, and Justice of the Peace Langston was assigned to preside over the case.

A party moving for summary judgment who does not have the burden of persuasion at trial must produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattret*, 477 U.S. 317, 324 (1986).  A party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id*.  The party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5

A party must support an assertion of fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations [...], admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  *See also* L.R. 56.1(a)(2) and (b)(2).  While the material presented in summary judgment proceedings "does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence[]" later at trial.  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).  *See also Celotex Corp.*, 477 U.S. at 324.

To be admissible, any specific item of documentary evidence must be authenticated by other evidence sufficient "to support a finding that the matter in question is what its proponent claims."  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  Evidentiary materials or exhibits may be "authenticated by affidavits or declarations of persons with personal knowledge through whom they could be introduced at trial."  *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  *See also Orr*, 285 F.3d at 774 (adding that authentication may occur by any manner permitted by Fed. R. Evid. 901(b) or 902).  Absent proper authentication, however, a court may not consider the exhibit in ruling on a summary judgment motion.  *Orr*, 285 F.3d at 773 (citing cases).

6

Where a party fails to address another party's factual assertion the court may consider the fact "undisputed for purposes of the motion[, ... and] grant summary judgment if the motion and supporting material — including the facts considered undisputed — show that the movant is entitled to it[.]"  Fed. R. Civ. P. 56(e)(2) and (3).

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), abrogated on other grounds as noted in *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

Finally, because Hubbard is proceeding pro se in this action the Court must construe his documents liberally and give them "the benefit of any doubt." *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).  *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

## III.   DISCUSSION

### A.  Hubbard's Federal Claims

42 U.S.C. § 1983 permits a plaintiff to present claims under federal law against a state official or employee if the plaintiff can establish that person was acting under color of state law and deprived the plaintiff of a federal right.  *Kirtley*

7

*v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).  Ramos moves for summary judgment on the grounds that Hubbard has failed to identify any evidentiary materials in the record reflecting any act or omission committed by Ramos that would give rise to her liability under section 1983.  As discussed below, the Court agrees that Hubbard has failed to present any evidence indicating Ramos is subject to liability.

The Court first notes that the claims Hubbard asserts against Ramos in his Amended Complaint are vague.  Hubbard alleges generally that all Defendants, as state actors, violated several of the rights secured him by the United States Constitution.  But Hubbard's specific allegations describing acts or omissions committed by Ramos are very limited.  He alleges only that Ramos did not assist him in his efforts to try to get Christian and Shayna back in his home after he was charged with the family member assault.  Thus, Hubbard's allegations do not expressly set forth the specific grounds for Ramos's alleged liability.

In his brief in response to Ramos's summary judgment motion, Hubbard similarly presents very limited information and arguments suggesting Ramos is liable.  He asserts generally that Ramos is liable and that she should stand trial to defend her actions.  But he fails to identify or describe any specific actions taken by Ramos that would subject her to liability under 42 U.S.C. § 1983.  Nor does he

8

identify any evidentiary materials in the record that describe conduct by Ramos that could sustain his section 1983 claims against her.

In view of Hubbard's very limited response to Ramos's motion, the Court notes that in reviewing a summary judgment motion the district court is not obligated to "scour the record in search of a genuine issue of material fact. [The district court] may rely on the nonmoving party to identify with reasonable particularity the evidence [in the record] that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted). Restated, the court is not obligated "to undertake a cumbersome review of the record" on behalf of the non-moving party. *Simmons v. Navajo County, Arizona*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Despite the vague grounds for Ramos's section 1983 liability, Ramos attempted to address what she believed are Hubbard's asserted grounds for liability and legal claims alleged against her. She believes Hubbard claims she provided financial and material benefits to Christian in an attempt to bribe Christian and Shayna to testify falsely against Hubbard with respect to the family member assault prosecution against Hubbard. Ramos explains in her affidavit that she served, as directed under Montana law, as Christian and Shayna's victim/witness advocate with respect to the criminal prosecution against Hubbard.

9

She explains that, as is customary in the course of her role as an advocate, various material and financial resources were made available to Christian and Shayna including cell phones, gifts and lunch meetings.  She also explains that many additional financial contributions and gifts were provided to Christian from the community long after Hubbard's criminal trial had concluded, the result of which was his acquittal on the family member assault charge.  But she affirmatively states in her affidavit that she "never attempted to bribe or coerce Christian or Shayna to testify in a particular way."  Dkt. 50-13 at ¶ 6.

Although not relied upon by Hubbard in response to Ramos's summary judgment motion, Christian's affidavit testimony in this case provides some limited additional information regarding Ramos's conduct.  Christian states in his affidavit that Ramos advised him that his testimony was necessary at Hubbard's criminal trial, and that she assisted him with the testimony that he was to give at trial.  He states only that he "agreed to keep with [Joseph Cik and Carol Ramos's] story [...], and their version of the events."  Aff. of Christian Hubbard at 15.  He states that prior to trial Cik and Ramos reviewed Christian's "story" with him to "make sure [he] was going to stick to the story [they all] had planned on."  *Id*. at 15-16.  Notably, however, Christian does not affirmatively state in his affidavit that Ramos instructed him to testify falsely.

10

Christian's affidavit is not inconsistent with Ramos's affidavit, and does not raise a genuine issue of fact indicating that Ramos encouraged Christian to testify falsely at Hubbard's trial, or that she bribed him to testify falsely.  At most, Christian's affidavit can be read to say that the "version" of the "story" Cik and Ramos encouraged Christian to tell at trial was nothing more than a "version" of the truth.  Christian's testimony indicates Ramos may have assisted and coached Christian as to aspects of the truthful facts that Christian needed to tell the jury. Christian does not state that Ramos encouraged or instructed him to testify falsely.

Furthermore, Christian does not present any affirmative evidence that Ramos actually sought to "bribe" him for his testimony.  He states, "I do feel that Joe Cik and Carol Ramos bribed me to testify in the [family member assault] trial."  Aff. of Christian Hubbard at 16.  Christian's affidavit testimony in this regard, however, is nothing more than speculation as to the actual purpose behind Ramos's conduct.  Unsubstantiated speculation as to what is asserted as a "fact" is insufficient to establish a genuine issue of material fact to preclude summary judgment.  *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).  Conclusory and speculative testimony in an affidavit is insufficient to defeat summary judgment.  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1252 (9th Cir. 2010).

11

Additionally, Christian confirms in his affidavit that he received significant financial resources and gifts <u>after</u> the criminal prosecution against Hubbard had concluded. Aff. of Christian Hubbard at 16. Considering that Hubbard was found not guilty at trial, any financial benefits Christian received after the trial cannot serve as evidence that he was bribed to provide favorable false testimony to secure Hubbard's conviction at trial. Therefore, the Court concludes Hubbard has not raised a genuine issue of material fact indicating Ramos bribed Christian to testify falsely.

Hubbard's Amended Complaint includes several other legal claims for relief alleging violations of his various constitutional rights committed by all Defendants generally. None of the claims expressly implicate Ramos's conduct in any of those claims. Consequently, Ramos moves for summary judgment dismissing all of Hubbard's section 1983 claims on the grounds that he has not presented evidence of Ramos's acts or omissions that would expose her to liability for any claim under section 1983.

The Court agrees there is no further evidentiary material in the record that would subject Ramos to liability. And Hubbard has not presented any argument or identified any further evidence in the record that would render Ramos liable for any of Hubbard's other claims under section 1983. Having failed to raise a

12

genuine issue of material fact implicating Ramos in any other specific section 1983 claims, the Court concludes that Ramos is entitled to summary judgment with respect to all of Hubbard's section 1983 claims.

Finally, Hubbard's Amended Complaint also includes a separate claim advanced pursuant to 42 U.S.C. § 1985(3). Ramos moves for summary judgment on the ground that Hubbard has neither presented any argument, nor identified any evidence in support of that claim. Hubbard did not respond to this aspect of Ramos's motion. The Court agrees Hubbard has not presented any evidence in support of his section 1985(3) claim, and for the reasons discussed the claim will be dismissed.

Section 1985(3) permits a civil action for the recovery of damages occasioned by the deprivation of civil rights in certain circumstances. Specifically, individual defendants may be liable: "If two or more persons [...] conspire [...] for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]" 42 U.S.C. § 1985(3). *See Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). The statutory provision was originally enacted in 1871 to protect the rights of African Americans and to protect against racially-based discriminatory conspiracies. Therefore, section 1985(3) requires that "there

must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). But the statute has been extended to protect some "non-racial groups only if 'the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or ... Congress has indicated through legislation that the class require[s] special protection.'" *Holgate*, 425 F.3d at 676.

Hubbard has not presented any evidence that raises a genuine issue of material fact suggesting that he is a member of a racial class, or a recognized suspect or quasi-suspect class that falls within the protection of section 1985(3). Thus, he has not presented any evidence to sustain his claim in this regard to survive summary judgment.

Additionally, a viable claim under 42 U.S.C. § 1985(3) requires sufficient "evidence of a conspiracy and an act in furtherance of that conspiracy[.]" *Holgate*, 425 F.3d at 676. Since Hubbard did not respond to this aspect of Ramos's summary judgment motion, he has not identified any evidence that raises a genuine issue of material fact suggesting Ramos was involved in any conspiracy. Therefore, Hubbard's section 1985(3) claim is properly dismissed on Ramos's summary judgment motion.

## B.  Hubbard's Claims Under Montana Law

Hubbard advances numerous claims cognizable under Montana law.  Ramos moves to dismiss all of those claims on the ground that she is immune from liability under the provisions of Mont. Code Ann. § 2-9-305(5).  The Court agrees.

Section 2-9-305 provides governmental employees with immunity against state law claims as follows:

> In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, unless [certain exclusions from immunity are applicable.]

Mont. Code Ann. § 2-9-305(5).

Consistent with section 2-9-305(5), the Montana Supreme Court has confirmed as follows:

> [W]here an action is brought against a county based on actionable conduct by an employee, the employee is immune from individual liability for the conduct if the county acknowledges that the conduct arose out of the course and scope of the employee's official duties.

*Kenyon v. Stillwater County*, 835 P.2d 742, 745 (Mont. 1992), overruled on other grounds by *Heiat v. Eastern Montana College*, 912 P.2d 787, 793 (Mont. 1996).

*See also Germann v. Stephens*, 137 P.3d 545, 553 (Mont. 2006).

15

Lincoln County acknowledges that Hubbard's state law claims against Ramos are based upon conduct committed by Ramos in the course and scope of her employment.  Dkt. 50 at ¶ 131.  Consequently, Ramos is immune under Mont. Code Ann. § 2-9-305(5) from individual liability for all of Hubbard's state law claims, and Ramos's motion is granted in this respect.

## IV.   CONCLUSION

Based on the foregoing, the Court finds Ramos has satisfied her summary judgment burden of establishing that Hubbard has not presented evidence of any act or omission committed by Ramos that would subject her to liability under either 42 U.S.C. § 1983 or § 1985(3).  Additionally, Ramos is entitled to immunity under Mont. Code Ann. § 2-9-305(5) for her individual liability under Montana law due to Lincoln County's acknowledgment that all of her actions alleged in Hubbard's Amended Complaint were taken in the course and scope of her employment with Lincoln County.

Therefore, IT IS HEREBY ORDERED that Ramos's summary judgment motion is GRANTED.

DATED this 29th day of August, 2013.

Jeremiah C. Lynch
United States Magistrate Judge

16