IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROBERT G. HUBBARD, JR.,<br><br>                  Plaintiff,<br><br>        vs.<br><br>JAY C. SHEFFIELD, Justice<br>of the Peace; JOSEPH CIK,<br>Deputy County Attorney;<br>LT. ROGER GUCHES;<br>DEPUTY TRAVIS SMITH;<br>SHERIFF ROBY BOWE;<br>CAROL RAMOS; LINCOLN COUNTY<br>MONTANA; DEPUTY SCOTT REBO;<br>JOHN DOES 1-10; and JANE DOES 1-<br>10,<br><br>                  Defendants. | CV 12–36–M–JCL<br><br><br>ORDER |

Before the Court are Defendants Roby Bowe, Roger Guches, Scott Rebo,

Travis Smith, and Lincoln County's Fed. R. Civ. P. 56 motions for summary

judgment.  Each motion requests dismissal of Plaintiff Robert Hubbard's

Amended Complaint.  Hubbard is proceeding pro se in this action.

For the reasons stated, the Court concludes the referenced motions are

properly denied as to several limited claims.  But the Court concludes the motions

1

shall be granted in all other respects dismissing the various claims specified herein.

## I.   **BACKGROUND**

This action arises from Hubbard's experiences with the criminal justice system in Lincoln County, Montana.  In July, 2010, Hubbard was arrested for disorderly conduct.  Following a jury trial before Defendant Jay Sheffield, Lincoln County Justice of the Peace, Hubbard was convicted of the charge, and Sheffield imposed sentence against Hubbard.  While Hubbard's appeal of that conviction was pending, Hubbard entered a plea agreement with Defendant Joseph Cik, Deputy Lincoln County Attorney — a plea agreement that reduced the sentence Sheffield had imposed.

Apparently displeased with the plea agreement, Sheffield expressed his displeasure to Cik, who, in turn, told Hubbard of Sheffield's displeasure.  Hubbard alleges that Sheffield thereafter had a vendetta against him, and that Cik, Sheffield, and the other Defendants conspired to target Hubbard for further adverse consequences within the criminal justice system.

On March 20, 2011, Hubbard and his teenage son, Christian, got involved in a dispute which escalated into a physical confrontation at the family's residence. Christian called the police, and Defendants Roger Guches and Travis Smith,

Lincoln County law enforcement officers, and Montana Highway Patrol Trooper Bryce Ford responded to the residence.  Guches and Smith interviewed Hubbard, Christian, and Hubbard's teenage daughter, Shayna.  Christian told the officers that Hubbard struck him with a broom.  But Hubbard alleges that Christian was the aggressor, and that Smith and Guches also believed that Christian assaulted Hubbard.

Hubbard asserts that while Smith was at Hubbard's residence, Smith called Defendant Roby Bowe, the Lincoln County Sheriff, to consult with him regarding the altercation.  Hubbard contends that Bowe instructed Smith to arrest Hubbard because Bowe and Sheffield are close friends and Bowe knew Sheffield was upset with Hubbard.  Allegedly as a result of his phone call with Bowe, Smith arrested Hubbard for the offense of family member assault in violation of Mont. Code Ann. § 45-5-206, and transported him to jail.

Guches remained at Hubbard's residence with Patrol Trooper Ford, and took photographs of the scene of the altercation and the location of the broom Hubbard allegedly used to hit Christian.  Hubbard alleges Guches rearranged items at the scene to support Christian's statements indicating Hubbard attacked Christian. Guches and Ford then left Hubbard's children, including a third child who was 9 years old, at the residence.

3

Smith prepared a police report of the incident between Hubbard and Christian.  Hubbard alleges Smith provided false information in his report.

Hubbard appeared before Sheffield for his arraignment on the criminal charge.  Sheffield detained Hubbard and set his bail in the amount of $10,000. Hubbard later posted bail and he was released from custody.  As a condition of his release, however, Sheffield prohibited Hubbard from having any contact with Christian and Shayna.  Consequently, Christian and Shayna began living with their uncle and were not permitted to live with Hubbard.

Hubbard elected to represent himself in the family member assault criminal case.  While the prosecution was pending, Hubbard interviewed Smith and Guches about their investigation of the altercation between Hubbard and Christian. Hubbard alleges Guches, Smith and Cik conspired to fabricate facts about Hubbard's altercation with Christian to sustain the prosecution against him.

Hubbard moved to disqualify Sheffield from presiding over the family member assault case on the basis that he believed Sheffield was biased against him.  Sheffield ultimately recused himself from the case.  Justice of the Peace Stormy Langston was then assigned to preside over the case.

At some point Hubbard moved to modify the condition of his release that prohibited him from having contact with Christian and Shayna.  Cik opposed the

motion, and Justice of the Peace Langston denied Hubbard's motion.  Later, however, Shayna was permitted to return to Hubbard's residence.

While the family member assault charge was pending, Guches learned that Hubbard's Oregon drivers' license was suspended.  Guches told Defendant Scott Rebo, a Lincoln County employee, that Hubbard's license was suspended, and he asked Rebo to let Guches know if he saw Hubbard driving.

On July 29, 2011, Rebo observed Hubbard driving his vehicle.  Rebo engaged Hubbard and told him to go to the Lincoln County Sheriff's Office.  Guches was at the Sheriff's Office, and when Hubbard arrived there Guches arrested Hubbard for driving with a suspended license.  Guches and Rebo then transported Hubbard to jail.

After Hubbard got out of jail he found that there was a mistake in Oregon's drivers' license records.  He states in his Amended Complaint that he fixed the mistake.

The prosecution against Hubbard on the family member assault charge proceeded.  Upon jury trial on September 20, 2011, Hubbard was found not guilty.

Hubbard advances numerous legal claims for relief against the various Defendants.  Invoking federal question jurisdiction, 28 U.S.C. § 1331, Hubbard asserts claims under 42 U.S.C. § 1983 for violations of his rights under the United

States Constitution.  And invoking supplemental jurisdiction, 28 U.S.C. § 1367,

Hubbard advances claims under Montana law.  He seeks both compensatory and

punitive damages.

## II.   APPLICABLE LAW - SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment

"if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  A movant may satisfy this

burden where the documentary evidence produced by the parties permits only one

conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

A party moving for summary judgment who does not have the burden of

persuasion at trial must produce evidence which either:  (1) negates an essential

element of the non-moving party's claim, or (2) shows that the non-moving party

does not have enough evidence of an essential element to ultimately carry his

burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210

F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must

go beyond the pleadings and designate by affidavits, depositions, answers to

interrogatories, or admissions on file, "specific facts showing that there is a

genuine issue for trial."  *Celotex Corp. v. Cattret*, 477 U.S. 317, 324 (1986).  A

party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party must support an assertion of fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations [...], admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). *See also* L.R. 56.1(a)(2) and (b)(2). While the material presented in summary judgment proceedings "does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence[]" later at trial. *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). *See also Celotex Corp.*, 477 U.S. at 324.

To be admissible, any specific item of documentary evidence must be authenticated by other evidence sufficient "to support a finding that the matter in

question is what its proponent claims." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  Evidentiary materials or exhibits may be "authenticated by affidavits or declarations of persons with personal knowledge through whom they could be introduced at trial." *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). *See also Orr*, 285 F.3d at 774 (adding that authentication may occur by any manner permitted by Fed. R. Evid. 901(b) or 902).  Absent proper authentication, however, a court may not consider the exhibit in ruling on a summary judgment motion.  *Orr*, 285 F.3d at 773 (citing cases).

Where a party fails to address another party's factual assertion the court may consider the fact "undisputed for purposes of the motion[, ... and] grant summary judgment if the motion and supporting material — including the facts considered undisputed — show that the movant is entitled to it[.]"  Fed. R. Civ. P. 56(e)(2) and (3).

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), abrogated on other grounds as noted in *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

Finally, because Hubbard is proceeding pro se in this action the Court must construe his documents liberally and give them "the benefit of any doubt." *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

## III.   DISCUSSION

### A.   Bowe, Guches, Smith and Rebo

#### 1.   Hubbard's Federal Claims - 42 U.S.C. § 1983

42 U.S.C. § 1983 permits a plaintiff to present claims under federal law against a state official or employee if the plaintiff can establish that person was acting under color of state law and deprived the plaintiff of a federal right. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Hubbard alleges all Defendants, as state actors, violated several of the rights secured him by the United States Constitution.

##### a.   Official Capacity Claims

Hubbard's federal claims against Defendants are pled against them in both their individual and official capacities. Defendants Bowe, Guches, Smith and Rebo move for summary judgment dismissing Hubbard's section 1983 claims to the extent the claims are asserted against them in their official capacities.

Although a plaintiff may pursue a section 1983 claim against a local governmental officer in either his individual/personal capacity, or in his official capacity, an official-capacity suit "'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) and *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978)).  Consequently, an official-capacity suit is treated as a suit against the employing governmental entity, and the entity is deemed the real party in interest. *Hafer*, 502 U.S. at 25.  Thus, where a governmental employee and the local governmental entity with which the employee is employed are both named as defendants in a lawsuit, the section 1983 claims against the employee in his or her official capacity are redundant to the claims against the employing governmental entity and, therefore, may be dismissed.  *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Department*, 533 F.3d 780, 799 (9th Cir. 2008).

Defendants Bowe, Guches, Smith and Rebo were, at all relevant times, employees of Lincoln County, and Lincoln County is also named as a Defendant in this action.  Therefore, Hubbard's claims against Bowe, Guches, Smith and Rebo in their official capacities are redundant to his claims against Lincoln County and are properly dismissed, leaving only Hubbard's claims against them in

10

their individual capacities.  *See Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079,

1114-15 (E.D. Cal. 2012).  Defendants' summary judgment motion is granted in

this respect.

### b.  Individual Capacity Claims

### (1)  Guches and Smith

Hubbard alleges Defendants Guches and Smith are liable under section

1983 for falsely arresting him in violation of his right against unreasonable seizure

protected under the Fourth Amendment to the United States Constitution.  With

respect to this claim, Guches and Smith argue they are entitled to qualified

immunity for their conduct in arresting Hubbard for the offense of family member

assault on March 20, 2011.  Guches also asserts qualified immunity is applicable

to his conduct in arresting Hubbard on July 29, 2011, for driving with a suspended

license.

Qualified immunity renders individual state actors immune from suit

"insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity 'gives government

officials breathing room to make reasonable but mistaken judgments,' and

'protects 'all but the plainly incompetent or those who knowingly violate the

law.'"" *Messerschmidt v. Millender*, ___ U.S. ___, 132 S. Ct. 1235, 1244-45 (2012) (citations omitted).

Under the qualified immunity analysis the court considers whether the facts, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right was violated, the court need not proceed further with its inquiry. *Id*. at 201.

Another independent prong of the immunity analysis requires the court to consider whether the asserted constitutional right was clearly established. *Saucier*, 533 U.S. at 201. A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. 532 U.S. at 202. *See also Acosta v. City of Costa Mesa*, 718 F.3d 800, 824 (9ᵗʰ Cir. 2013).

> "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citation omitted).

*Messerschmidt*, 132 S. Ct. at 1245. Restated, "existing precedent must have placed the statutory or constitutional question beyond debate." *Acosta*, 718 F.3d

at 824 (quoting *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2083 (2011)).

The court has "discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances in the

particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Under Fourth Amendment law, an arrest is reasonable if it is supported by

probable cause to believe that the arrested individual committed a criminal

offense. *Acosta*, 718 F.3d at 825.  In assessing whether probable cause existed for

the arrest the courts "look to 'the totality of circumstances known to the arresting

officers, [to determine if] a prudent person would have concluded that there was a

fair probability that [the defendant] had committed a crime.'" *Id*. (quoting *United

States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)).  *See also Lacey v. Maricopa

County*, 693 F.3d 896, 918 (9th Cir. 2012) (noting that "a fair probability or

substantial chance of criminal activity" constitutes probable cause).

For purposes of analyzing qualified immunity in the context of a false arrest

claim under the Fourth Amendment, although the law is clearly established that

probable cause is required for an arrest, "the application of [the] requirement [of

probable cause] must be clearly established in a particularized context." *Conner v.

Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012).  The issue of whether the right to be

free from arrest absent probable cause is clearly established in a particular case

13

"turns on 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  "An officer is entitled to immunity where a reasonable officer would believe that probable cause existed, even if that determination was a mistake." *Acosta*, 718 F.3d at 825 n.14.  "The fact that reasonable people could draw different conclusions based on [the arrestee's] behavior, however, is irrelevant to the probable cause analysis." *Conner*, 672 F.3d at 1132.  The only question for the court's consideration is whether the arresting officers could have reasonably concluded that probable cause existed in support of the arrest, and the possibility that the "opposite conclusion was also reasonable, or even more reasonable," is irrelevant to the qualified immunity analysis. *Id.*

A district court must resolve the issue of qualified immunity "as a matter of law when 'the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts.'" *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003)).  It is only when "historical facts material to the qualified immunity determination are in dispute" that the court should submit the issue of qualified immunity to a jury. *Id.* (citing *Torres v. City of Los Angeles*, 548 F.3d 1197, 1211 (9th Cir. 2008)).  Thus, where there is no

14

material dispute as to the information known to the officers who are assessing the existence of probable cause, then the court may resolve the issue of qualified immunity as a matter of law. *Id*.

Smith and Guches arrested Hubbard on March 20, 2011, for the offense of family member assault. The offense is set forth in Mont. Code Ann. § 45-5-206, and is described as follows:

> (1) A person commits the offense of partner or family member assault if the person:
>
> > (a) purposely or knowingly causes bodily injury to a partner or family member;
> >
> > (b) negligently causes bodily injury to a partner or family member with a weapon; or
> >
> > (c) purposely or knowingly causes reasonable apprehension of bodily injury in a partner or family member.

Mont. Code Ann. § 45-5-206(1).

Christian states that when he called 911, he told the 911 operator that Hubbard "had beaten [him] up." Aff. of Christian Hubbard at 8. When Smith arrived at the scene, Christian told Smith that Hubbard "had hit [Christian] with a broom." Aff. of Christian Hubbard at 9. Christian states, however, that while he was talking to Smith he changed his story about what Hubbard had done to him.

Specifically, Christian told Smith and Guches that Hubbard had not hit him with the broom.  *Id*.

Shayna states that initially she described Hubbard's conduct to Guches based on what she heard Christian tell the 911 operator – that Hubbard had beaten Christian.  Aff. of Shayna Hubbard at ¶ 7.  But she also states she later told Guches that Christian was not telling the truth about Hubbard's conduct.  *Id*.

Guches and Smith both confirm that they received conflicting statements from all the witnesses at the scene of the altercation.  Hubbard told them Christian was the aggressor in the altercation, and they also understood Christian and Shayna's statements to assert that Hubbard was the aggressor and that Hubbard struck Christian's face.  Doc. 50-2 at ¶¶ 8-9; Doc. 50-3 at ¶¶ 9-10.  Smith states Shayna told him that Hubbard struck Christian with a broom and his fists.  Doc. 50-3 at ¶ 14.  Guches and Smith were each aware that both Hubbard and Christian had abrasions, or minor injuries on their bodies as a result of the altercation.  Doc. 50-2 at ¶ 17; Doc. 50-3 at ¶ 19.

In view of the conflicting information Guches and Smith had received at the scene of the altercation, they recognized they needed to "determine who was telling the truth to the best of [their abilities]."  Doc. 50-2 at ¶ 17; Doc. 50-3 at ¶ 19.  Guches and Smith knew that Hubbard was significantly heavier than

Christian, and Hubbard had been a wrestler in high school. Doc. 50-2 at ¶¶ 20-21; Doc. 50-3 at ¶¶ 22-23. Guches and Smith consulted with each other, and based on the totality of circumstances, they determined probable cause existed to believe that Hubbard committed the offense of family member assault based on Christian and Shayna's statements about Hubbard's conduct. Doc. 50-2 at ¶¶ 22-23; Doc. 50-3 at ¶¶ 24-25.

In response to the summary judgment motion, Hubbard asserts he was not the aggressor in the altercation with Christian. Hubbard identifies numerous assertions of facts which he contends should have indicated to Guches and Smith that they lacked probable cause to believe he committed the offense of family member assault.

But Hubbard's arguments as to the conclusion Guches and Smith should have reached with respect to the existence of probable cause to arrest him, even if supported by admissible evidentiary materials, are insufficient to avoid summary judgment. Even viewing Hubbard's arguments as to his innocence in his favor, and even accepting that Christian and Shayna changed their statements they provided to the officers, Guches and Smith have sufficiently established that based on the totality of the circumstances known to them, it was reasonable for them to conclude that probable cause existed to arrest Hubbard. There is no material

17

dispute as to the totality of the information known to Guches and Smith at the

scene of the altercation, which included information conveyed to them that

Hubbard had beaten up Christian by striking him not only with a broom but also

with his fists.  Hubbard's size, and Guches and Smith's knowledge of Hubbard's

background as a wrestler is also significant.  "[T]he relative sizes and apparent

strength of each person[, and the] statements made by witness" are relevant factors

an officer must consider in determining which of two people should be arrested at

the scene of an alleged family member assault.  Mont. Code Ann. § 46-6-

311(2)(b)(iv) and (vi).

Guches and Smith's conclusion as to the existence of probable cause was

reasonable despite the existence of other facts on which reasonable people could

draw a different conclusion about Hubbard's conduct.  The reasonableness of

another conclusion that could be drawn from the same set of facts is irrelevant to

the probable cause analysis and the qualified immunity inquiry.  The only relevant

question – answered affirmatively in this case – is whether Guches and Smith

could have reasonably concluded that probable cause existed in support of their

decision to arrest Hubbard based on the information undisputedly provided to

them, and the totality of the circumstances.  Therefore, Guches and Smith are

entitled to qualified immunity for their conduct in arresting Hubbard on March 20, 2011.

Guches next asserts he is entitled to qualified immunity with respect to his conduct in arresting Hubbard on July 29, 2011, for driving with a suspended license.  On that date Guches obtained information through the Criminal Justice Information Network indicating that Hubbard's Oregon driver's license was suspended.  Doc. 50-2 at ¶ 42; Doc. 50-2 at 21 of 24.  On July 29, 2011, Defendant Scott Rebo informed Guches that he saw Hubbard driving and, consequently, Guches arrested Hubbard for the offense of driving while his license was suspended.  Doc. 50-2 at ¶¶ 44 and 48.

The offense of driving a motor vehicle while the driver's license is suspended is described as follows:

> (1)(a) A person commits the offense of driving a motor vehicle without a valid license or without statutory exemption or during a suspension or revocation period if the person drives:
>
>> (i) a motor vehicle on any public highway of this state at a time when the person's privilege to drive or apply for and be issued a driver's license is suspended or revoked in this state or any other state[.]

Mont. Code Ann. § 61-5-212(1)(a)(i).

The record establishes that the information known to Guches on July 29, 2011, was that Hubbard was driving a motor vehicle while his Oregon driver's

license was suspended.  Thus, Guches had probable cause to arrest Hubbard.  That Hubbard now argues his license was, in fact, not suspended, or was mistakenly reported as suspended, is of no consequence in the assessment of probable cause and qualified immunity in view of the information available to Guches.  Therefore, Guches is entitled to qualified immunity for his conduct in arresting Hubbard on July 29, 2011.

### (2)   Bowe and Rebo

Defendants Bowe and Rebo move for summary judgment on the ground that Hubbard has not identified evidence establishing that either Bowe or Rebo personally committed any act or omission that would give rise to their liability under 42 U.S.C. § 1983.  The Court agrees.

A claim under 42 U.S.C. § 1983 against an individual defendant requires proof that the individual personally participated in, and had an integral involvement in, the alleged unlawful conduct.  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008).  For liability to exist, an individual must be an actual and integral participant as opposed to a mere bystander; each individual's liability must be based on his or her own personal conduct.  *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996).  The individual's own conduct must have caused a constitutional deprivation, and the proper focus is on the specific facts of each

individual's personal acts or omissions, and the direct causal connection between those acts and the constitutional violation. *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988).

> A person deprives another of a constitutional right, where that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made."

*Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978)), overruled on other grounds by *Hunter v. Hydrick*, 129 S. Ct. 2431 (2009).

Hubbard's claims against Rebo arise solely from Rebo's conduct on July 29, 2011, that led to Guches' arrest of Hubbard for driving with a suspended license. But, it is undisputed that Guches, and not Rebo, arrested Hubbard that day. A law enforcement officer is entitled to qualified immunity with respect to a claim for unlawful or false arrest in a situation where that officer did not effect the plaintiff's arrest, and the plaintiff was actually arrested by another officer. *Johnson v. Bay Area Rapid Transit District*, ___ F.3d ___, 2013 WL 3888840, *9 (9th Cir. 2013). Thus, Rebo is entitled to qualified immunity with respect to Hubbard's false arrest claim arising from his July 29, 2011 arrest.

Similarly, Hubbard has not identified admissible evidentiary materials in the record of this case, as required in opposing summary judgment, suggesting Bowe personally engaged in conduct that directly resulted in the deprivation of Hubbard's constitutional rights.  Hubbard suggests that Bowe participated in a conspiracy against Hubbard to violate Hubbard's rights.  But Hubbard does not present affidavit or deposition testimony, answers to interrogatories, or admissions on file that contain admissible facts giving rise to a genuine issue of fact as to whether Bowe was, in fact, involved in a conspiracy against Hubbard.

A plaintiff's unsupported assertions that a conspiracy existed are insufficient to survive summary judgment.  A plaintiff must point to specific facts that would support a logical and reasonable inference that it is more likely than not that a conspiracy existed.  *Hewitt v. Grabicki*, 794 F.2d 1373, 1382 (1986) and *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 903 (9th Cir. 1987).  Conclusory assertions of a conspiracy, unsupported by specific probative facts, are insufficient.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (noting that "summary judgment cannot be defeated by relying solely on conclusory allegations unsupported by" specific facts).  Vague, conclusory assertions of a conspiracy are insufficient "to suggest any actions [were] taken in furtherance of a purported conspiracy."  *Krug v. Imbordino*, 896 F.2d 395, 397 (9th Cir. 1990).

Due to the absence of any admissible evidence of Bowe's personal conduct and involvement in an alleged conspiracy that caused a deprivation of Hubbard's rights, Bowe is entitled to summary judgment dismissing Hubbard's section 1983 claims.

### (3)   Hubbard's Remaining Federal Claims

Defendants Smith and Guches purportedly seek summary judgment as to all of Hubbard's federal claims advanced under 42 U.S.C. § 1983.  Their point heading in their brief reads as follows:

> Guches and Smith Are Entitled to Summary Judgment on [Hubbard's] Federal Individual Capacity Claims Because There Was Probable Cause to Arrest [Hubbard] and They Are Entitled to Qualified Immunity.

Doc. 55 at 5.

But Hubbard's federal claims are not limited to only his claims of his alleged unlawful arrests.  He also asserts claims alleging Defendants unlawfully fabricated evidence "both at the initial crime scene, and subsequently in the pre-trial phase and up to the actual trial," in violation of his rights to due process and equal protection of the law guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution, respectively.  Doc. 24 at 25.[1]

_____

[1]There is a clearly established due process right not to be subjected to criminal charges on the basis of deliberately fabricated evidence. *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).

23

Contrary to Defendants' assertion in their brief, the existence of probable cause in support of Hubbard's two arrests does not resolve these additional constitutional claims.  Hubbard asserts in his affidavit various factual matters he believes are instances of Defendants' conduct in fabricating evidence subsequent to his arrest: (1) Smith's police report of Hubbard's altercation with Christian contains false and fabricated facts (Aff. of Robert Hubbard at 3); (2) Defendants intentionally destroyed or withheld audio and video recordings made at the scene of the altercation (*Id*. at 6); (3) Guches moved the broom at the scene of the altercation, and during the trial Guches presented differing explanations in his testimony as to the location of the broom and why it was moved (*Id*. at 3-4); and (4) Guches "rearranged [the] bedroom" at the scene of the altercation and photographed the rearranged bedroom (Aff. of Shayna Hubbard at 2, and Aff. of Christian Hubbard at 1-2).  In their summary judgment motion and supporting brief, however, Defendants did not otherwise present arguments for, or evidence in support of, summary judgment specific to the elements of these additional claims of fabricated evidence under the Fifth and Fourteenth Amendments.  Thus, Defendants have not satisfied their initial summary judgment burden in this regard, and this aspect of their motion is denied at this time.  Whether Hubbard can sustain his burden as to the merits of his claims of fabricated evidence remains to be seen.

24

## 2.   <u>Hubbard's Claims Under Montana Law</u>

Invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a),
Hubbard advances numerous claims under Montana law.  In exercising
supplemental jurisdiction over state law claims, the Court must apply state
substantive law to the same extent as if it were exercising diversity jurisdiction.
*Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).

Bowe, Guches, Smith and Rebo move for summary judgment as to all of
Hubbard's state law claims on the ground that they are immune from liability
under the provisions of Mont. Code Ann. § 2-9-305(5).  The Court agrees.

Section 2-9-305 provides governmental employees with immunity against
state law claims as follows:

> In an action against a governmental entity, the employee whose conduct
> gave rise to the suit is immune from liability by reasons of the same subject
> matter if the governmental entity acknowledges or is bound by a judicial
> determination that the conduct upon which the claim is brought arises out of
> the course and scope of the employee's employment, unless [certain
> exclusions from immunity are applicable.]

Mont. Code Ann. § 2-9-305(5).

Consistent with section 2-9-305(5), the Montana Supreme Court has
confirmed as follows:

> [W]here an action is brought against a county based on actionable conduct
> by an employee, the employee is immune from individual liability for the

25

conduct if the county acknowledges that the conduct arose out of the course and scope of the employee's official duties.

*Kenyon v. Stillwater County*, 835 P.2d 742, 745 (Mont. 1992), overruled on other grounds by *Heiat v. Eastern Montana College*, 912 P.2d 787, 793 (Mont. 1996). *See also Germann v. Stephens*, 137 P.3d 545, 553 (Mont. 2006).

Lincoln County acknowledges that Hubbard's state law claims against Bowe, Guches, Smith and Rebo are based upon conduct committed by those Defendants in the course and scope of their employment.  Doc. 50 at ¶ 131. Consequently, they are immune under Mont. Code Ann. § 2-9-305(5) from individual liability for all of Hubbard's state law claims.

Hubbard argues, however, that exclusions from the grant of immunity described in Mont. Code Ann. § 2-9-305(5) and (6)(b), (c) and (d) are applicable in this case.  Those exclusions apply where:

a judicial determination is made that:

[...]

(b) the conduct of the employee constitutes a criminal offense as defined in Title 45, chapters 4 through 7;

(c) the employee compromised or settled the claim without the consent of the government entity employer; or

(d) the employee failed or refused to cooperate reasonably in the defense of the case.

26

Mont. Code Ann. § 2-9-305(6)(b), (c) and (d).

Other than his bare argument for application of the foregoing statutory exclusions from immunity, Hubbard does not present admissible evidentiary materials on which a judicial determination could be made with respect to the exclusions.  Thus, Hubbard has not met his summary judgment burden to support the applicability of any of the exclusions.

Based on the foregoing, Bowe, Guches, Smith and Rebo are entitled to immunity under Mont. Code Ann. § 2-9-305(5) with respect to all of Hubbard's claims against them advanced under Montana law.  Their motion is properly granted in this respect.

### B.  Lincoln County

#### 1.    Hubbard's Federal Claims

##### a.    42 U.S.C. § 1983

Defendant Lincoln County moves for summary judgment dismissing Hubbard's claims asserted under 42 U.S.C. § 1983 on the grounds that Hubbard has not presented evidence sufficient to support those claims of liability against the County.  The Court agrees.

As with individual state or local officials and employees, county and local governmental entities, such as Lincoln County, also qualify as "persons" within

27

the meaning of 42 U.S.C. § 1983, and can be sued for damages under that statute.

*Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). But a local

governmental entity is subject to liability under *Monell* and § 1983 only if "a

policy, practice, or custom of the entity can be shown to be a moving force behind

a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892,

900 (9th Cir. 2011). *See also Monell*, 436 U.S. at 693-94.

> [I]t is when execution of a government's policy or custom, whether made by
> its lawmakers or by those whose edicts or acts may fairly be said to
> represent official policy, inflicts the injury that the government as an entity
> is responsible under § 1983.

*Monell*, 436 U.S. at 694. Finally, a local governmental entity may be liable if it

has a "policy of inaction and such inaction amounts to a failure to protect

constitutional rights." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir.

2001) (citations omitted).

A "policy" that is sufficient to impose liability on a municipality must be a

conscious decision to adopt a particular course of action. *Harper v. City of Los

Angeles*, 533 F.3d 1010, 1024 (9th Cir. 2008). "[U]nder *Monell*, a 'policy' is 'a

deliberate choice to follow a course of action ... made from among various

alternatives by the official or officials responsible for establishing final policy

28

with respect to the subject matter in question.'" *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008) (citation omitted).

Under *Monell*, a "custom" is described as "a practice [that] is so permanent[, widespread], and well-settled as to constitute a 'custom or usage' with the force of law [...] despite the absence of written authorization or express municipal policy." *Bouman v. Block*, 940 F.2d 1211, 1231 (9th Cir. 1991) and *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The Court finds Hubbard has presented absolutely no evidence of a policy, practice, or custom that exists, or existed, in Lincoln County that directly caused, and was the moving force behind, a deprivation of any of Hubbard's constitutional rights.  Hubbard asserts numerous arguments in his brief alleging or suggesting that Lincoln County has unconstitutional policies, practices, and customs.  But he has not identified any admissible facts by way of affidavits, depositions, answers to interrogatories, or admissions on file that raise a genuine issue of material fact indicating that the asserted policies, practices, and customs actually exist.  Thus, Hubbard has failed to meet his summary judgment burden of presenting evidence on which a jury could conclude Lincoln County is liable under section 1983. Lincoln County's motion is granted in this respect.

**b.      42 U.S.C. § 1985(3)**

Lincoln County also moves for summary judgment dismissing Hubbard's conspiracy claims advanced pursuant to 42 U.S.C. § 1985(3).  Lincoln County argues there is no evidence to support Hubbard's section 1985(3) claims, and it asserts summary judgment dismissing the claims is warranted "for the County and all other Defendants."  Doc. 57 at 6.  The Court agrees Hubbard cannot sustain those claims.

Section 1985(3) permits a civil action for the recovery of damages occasioned by the deprivation of civil rights in certain circumstances. Specifically, individual defendants may be liable:  "If two or more persons [...] conspire [...] for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]"  42 U.S.C. § 1985(3).  *See Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).  The statutory provision was originally enacted in 1871 to protect the rights of African Americans and to protect against racially-based discriminatory conspiracies.  Therefore, section 1985(3) requires that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  But the statute has been extended in limited situations to protect some "non-racial groups only if 'the courts have designated the class in question a

suspect or quasi-suspect classification requiring more exacting scrutiny or ... Congress has indicated through legislation that the class require[s] special protection.'" *Holgate*, 425 F.3d at 676.

Hubbard has not presented any evidence that raises a genuine issue of material fact suggesting that he is a member of a racial class, or a recognized suspect or quasi-suspect class that falls within the protection of section 1985(3). Thus, he has not presented any evidence to sustain his claim in this regard to survive summary judgment.

Additionally, a viable claim under 42 U.S.C. § 1985(3) requires sufficient "evidence of a conspiracy and an act in furtherance of that conspiracy[.]" *Holgate*, 425 F.3d at 676.  Since Hubbard did not respond to this aspect of Lincoln County's summary judgment motion, he has not identified any evidence that raises a genuine issue of material fact suggesting Lincoln County was involved in a conspiracy.  Therefore, Hubbard's section 1985(3) claim is properly dismissed on Lincoln County's summary judgment motion.

### 2.    Hubbard's Claims Under Montana Law

Lincoln County first moves for summary judgment dismissing Hubbard's claims advanced under Montana law that are predicated upon conduct committed by Defendants Jay Sheffield, Joseph Cik, and Carol Ramos, the Lincoln County

Victim/Witness Advocate.  By Orders entered on August 5, 2013, and August 29, 2013, the Court has dismissed all of Hubbard's claims against Sheffield, Cik and Ramos.

The Court dismissed Hubbard's claims against Cik due to his prosecutorial immunity from liability.  That immunity also extends to protect against Lincoln County's vicarious liability for Cik's conduct.  *Rosenthal v. County of Madison*, 170 P.3d 493, 498 (Mont. 2007).  *See also Rahrer v. Board of Psychologists*, 993 P.2d 680, 682 (Mont. 2000) (citing *State ex rel Department of Justice v. District Court*, 560 P.2d 1328, 1330 (Mont. 2000)).  Therefore, Lincoln County is immune from liability for Cik's conduct alleged in this action.

The Court dismissed Hubbard's claims against Sheffield based on the doctrine of judicial immunity.  Montana law provides that "[t]he state and other governmental units are immune from suit for acts or omissions of the judiciary." Mont. Code Ann. § 2-9-112(1).  This statutory language immunizes Lincoln County from liability predicated upon Sheffield's conduct as a Justice of the Peace in Lincoln County.  *Silverstrone v. Park County*, 170 P.3d 950, 953-954 (Mont. 2007).

With respect to Carol Ramos, however, the Court did not dismiss Hubbard's claims of liability against her on their merits.  Instead, the Court dismissed the

claims based on the immunity from personal liability granted her by Mont. Code Ann. § 2-9-305(5). Thus, despite Ramos's immunity, Lincoln County would potentially remain exposed to liability for the torts of its employees as provided under Mont. Code Ann. § 2-9-102. Lincoln County has otherwise not established it is not liable for Hubbard's claims under Montana law that are predicated upon Ramos's conduct.

Lincoln County next argues that Mont. Code Ann. § 46-24-105 precludes it from being subjected to liability for Ramos's actions. The Court concludes Lincoln County's arguments lack merit.

Section 46-24-105 states as follows: "Nothing in this chapter may be construed to create a cause of action for damages against the state or one of its political subdivisions." Chapter 24 of Title 46, Montana Code Annotated, establishes the duties and obligations imposed upon those individuals responsible for assisting and advocating for crime victims and witnesses. Therefore, section 46-24-105 merely bars a cause of action predicated upon the duties or obligations set forth in Chapter 24. The statute is not so broadly worded that it bars any and all causes of action cognizable under other provisions of Montana statutory or common law.

33

Based on the foregoing, Lincoln County has not met its summary judgment burden of establishing that it has no liability for any of Ramos's conduct. Lincoln County's motion is denied in this respect.

Finally, Lincoln County requests summary judgment dismissing Hubbard's claims against it that are predicated upon the conduct of Bowe, Guches, Smith and Rebo. Lincoln County's sole, express argument in that regard, however, is that it is not liable for Smith and Guches' conduct on March 20, 2011, in arresting Hubbard for the offense of family member assault, or for Guches' conduct on July 29, 2011, in arresting Hubbard for driving with a suspended license, because the record establishes Smith and Guches had probable cause to effect those arrests. For the reasons discussed, the Court agrees that probable cause existed to justify the officers' decisions to arrest Hubbard on these two occasions.

Hubbard advances his unlawful arrest claim pursuant to his right against unreasonable seizures protected under the Montana Constitution. The applicable provision states as follows: "The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures." Mont. Const. art. II, § 11. It is clearly settled under Montana law that:

> The lawfulness of a warrantless arrest turns on the existence of probable cause. An officer "must have probable cause to justify a warrantless arrest." *State v. Williamson*, 1998 MT 199, ¶ 12, 290 Mont. 321, 965 P.2d 231

(citing § 46–6–311(1), MCA).  Thus, probable cause is the "standard set by the Constitution" by which the reasonableness of a seizure is measured to determine whether the arrestee's constitutional rights have been protected. *Henry v. U.S.*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); see also Carroll v. U.S., 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925).  Probable cause exists "where the facts and circumstances within an officer's personal knowledge prove sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense." *State v. Ellington*, 2006 MT 219, ¶ 16, 333 Mont. 411, 143 P.3d 119 (citing *Williamson*, ¶ 12).  If supported by facts demonstrating probable cause, a warrantless arrest will be held lawful. *Virginia v. Moore*, 553 U.S. 164, 171, 128 S.Ct. 1598, 1604, 170 L.Ed.2d 559 (2008).

*State v. Kelm*, 300 P.3d 687, 693 (Mont. 2013).

Further, Montana statutory law permits a law enforcement officer to arrest an individual if the officer has probable cause to believe the person committed a criminal offense.  Mont. Code Ann. § 46-6-311(1).  In accordance with section 46-6-311, "[p]robable cause is established if 'the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense.'"  *Dean v. Sanders County*, 204 P.3d 722, 727 (Mont. 2009).  The plaintiff bears the burden of proving the absence of probable cause, and a county government is not required to prove the existence of probable cause. *Id*.

For the reasons previously discussed relative to Hubbard's section 1983 unlawful arrest claims, the Court concludes probable cause existed to believe Hubbard had committed the offense of family member assault under Mont. Code Ann. § 45-5-206(1), and the offense of driving a motor vehicle while the driver's license is suspended in violation of Mont. Code Ann. § 61-5-212(1)(a)(i), under the circumstances known to Smith and Guches at the time of the arrests. Therefore, Lincoln County is entitled to summary judgment as to its liability under the unreasonable seizure provision of the Montana Constitution predicated upon Smith and Guches' conduct in arresting Hubbard on March 20, 2011, and July 19, 2011.

Although Lincoln County expressly moves for summary judgment only as to Hubbard's claims of unlawful arrests, the Court notes Hubbard advances several other independent claims cognizable under Montana law.  He asserts claims under the Montana Constitution for alleged violations of his rights to individual privacy (Mont. Const. art. II, § 10), and due process (Mont. Const. art. II, § 17).  He further alleges Defendants are liable for malicious prosecution, negligent and intentional infliction of emotional distress, slander, negligent and intentional spoliation of evidence, "malicious acts and/or omissions", "acting in concert", and

36

negligence.  Finally, he requests an award of punitive damages as provided by Montana law.

Lincoln County moves, in a general, conclusory fashion, for summary judgment dismissing all of Hubbard's state law claims.  But, its sole argument is that probable cause existed for the two instances where Smith and Guches arrested Hubbard, and it argues, therefore, that "his state law claims are defeated.  It is difficult to conceive how any of [Hubbard's] state law claims survive his failure to demonstrate there was no probable cause to arrest him and the County is entitled to summary judgment as a matter of law for this reason as well."  Doc. 57 at 8. Lincoln County does not expressly address the merits of any of Hubbard's state law claims other than his claims of the alleged unlawful arrests.  Consequently, Lincoln County has not met its initial summary judgment burden of demonstrating it is not liable under each of Hubbard's referenced independent claims under Montana law predicated upon the conduct of Bowe, Guches, Smith and Rebo. Therefore, its summary judgment motion is denied as to any other state law claims.

Nonetheless, the Court will address, as a matter of law, the viability of Hubbard's two other claims under the Montana Constitution – his claims for violations of his rights to privacy and to due process.  For the reasons discussed, those claims cannot survive summary judgment as a matter of law.

37

The Montana Constitution protects an individual's right to privacy as follows:  "The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest."  Mont. Const. art. II, § 10.  But to the extent Hubbard alleges the two instances when he was arrested violated his constitutional right to privacy, the claims lack merit as a matter of law.  The existence of probable cause for an arrest precludes a claim for a violation of the right to privacy under the Montana Constitution.  *Peschel v. City of Missoula*, 664 F. Supp. 2d 1149, 1163 (D. Mont. 2009) (citing Montana law).

The Court has found that Smith and Guches had probable cause to arrest Hubbard on each occasion.  Therefore, the circumstances of this case do not implicate the right to privacy under Article II, § 10 of the Montana Constitution, and Smith and Guches did not violate Hubbard's privacy rights by arresting him. The claim is properly dismissed.

Similarly, Hubbard's due process claim under the Montana Constitution also fails.  The due process clause states as follows:  "No person shall be deprived of life, liberty, or property without due process of law."  Mont. Const. art. II, § 17. But to the extent Hubbard asserts his alleged unlawful arrests also constitute

violations of his due process rights, the claims cannot be sustained as a matter of law.

Hubbard's unlawful arrest claims are founded upon Article II, § 11 of the Montana Constitution which prohibits unreasonable searches and seizures. Consequently, the "textual source rule" requires that his unlawful arrest claims be analyzed solely under the unreasonable seizure provision, and it precludes Hubbard's claims under any other generalized provision of the constitution such as the due process clause in Article II, § 17 of the Montana Constitution. *Peschel*, 664 F. Supp. 2d at 1162. Therefore, Lincoln County's motion is properly granted and Hubbard's due process claims arising from his arrests are dismissed.

## IV.   CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that Lincoln County's motion for summary judgment, and Bowe, Guches, Smith and Rebo's summary judgment motion are GRANTED, in part, and the following claims are DISMISSED:

1.   Hubbard's 42 U.S.C. § 1985(3) claims;

2.   Hubbard's 42 U.S.C. § 1983 claims:

    a.   against Lincoln County;

    b.   against Bowe, Guches, Smith and Rebo in their official capacities;

    c.   against Guches and Smith for unlawfully arresting Hubbard in violation of his rights under the Fourth Amendment;

      d.      against Bowe and Rebo in their individual capacities;

3.      Hubbard's claims under Montana law:

      a.      advanced directly against Bowe, Guches, Smith, and Rebo;

      b.      against Lincoln County predicated upon the conduct of Cik and Sheffield;

      c.      against Lincoln County alleging violations of his rights against unreasonable seizures, to privacy, and to due process protected under the Montana Constitution predicated upon Hubbard's two alleged unlawful arrests;

IT IS FURTHER ORDERED that Lincoln County's motion for summary judgment, and Bowe, Guches, Smith and Rebo's summary judgment motion are DENIED with respect to the following claims:

1.      Hubbard's claims under 42 U.S.C. § 1983 alleging Defendants are liable for the fabrication of evidence in violation of Hubbard's due process and equal protection rights under the Fifth and Fourteenth Amendments; and

2.      Hubbard's claims alleging Lincoln County is liable under Montana law  for malicious prosecution, negligent and intentional infliction of emotional distress, slander, negligent and intentional spoliation of evidence, "malicious acts and/or omissions", "acting in concert", negligence, and punitive damages based on the conduct of Bowe, Guches, Smith, Rebo, and Ramos.

DATED this 27th day of September, 2013.

_____

Jeremiah C. Lynch
United States Magistrate Judge