IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROBERT G. HUBBARD, JR.,<br><br>        Plaintiff,<br><br>  vs.<br><br>JAY C. SHEFFIELD, Justice<br>of the Peace; JOSEPH CIK,<br>Deputy County Attorney;<br>LT. ROGER GUCHES;<br>DEPUTY TRAVIS SMITH;<br>SHERIFF ROBY BOWE;<br>CAROL RAMOS; LINCOLN COUNTY<br>MONTANA; DEPUTY SCOTT REBO;<br>JOHN DOES 1-10; and JANE DOES 1-<br>10,<br><br>        Defendants. | CV 12–36–M–JCL<br><br><br>ORDER |

Before the Court is Defendants Roby Bowe, Roger Guches, Scott Rebo,

Travis Smith, and Lincoln County's ("Defendants") Motion for Rule 37 Sanctions.

Defendants request the Court dismiss this action on the ground that Plaintiff

Robert Hubbard failed to comply with the Court's orders issued during a hearing

conducted on March 27, 2013 with respect to Defendants' Motion to Compel

Discovery Responses. For the reasons discussed, the Court concludes this action

is properly dismissed.

1

# I.    BACKGROUND

Hubbard, proceeding pro se, commenced this action in an effort to remedy what he perceives as injustices that he suffered as a result of his encounters with the criminal justice system in Lincoln County, Montana.  In 2010, Hubbard was convicted of disorderly conduct, and Defendant Jay Sheffield, Lincoln County Justice of the Peace, sentenced Hubbard on the conviction.  But during the pendency of the direct appeal, Hubbard negotiated a plea agreement with Defendant Joseph Cik, Deputy Lincoln County Attorney, that reduced the sentence.

Hubbard believes that Sheffield, upset with the plea agreement, thereafter had a vendetta against him.  Hubbard alleges Sheffield and the other Defendants conspired to target Hubbard for further adverse consequences within the criminal justice system.

On March 20, 2011, Hubbard and his son, Christian, got involved in a dispute which escalated into a physical confrontation at the family's residence in Libby, Montana.  Christian called the police, and Defendants Roger Guches and Travis Smith, Lincoln County law enforcement officers, responded to the scene.

Hubbard believes Smith called Defendant Roby Bowe, the Lincoln County Sheriff, regarding the altercation.  Hubbard contends that Bowe instructed Smith

to arrest Hubbard because Bowe and Sheffield are close friends and Bowe knew Sheffield was upset with Hubbard.  Smith arrested Hubbard for the offense of family member assault in violation of Mont. Code Ann. § 45-5-206.

Hubbard alleges Defendants engaged in various activities to wrongfully sustain the criminal prosecution.  Hubbard alleges Guches manipulated physical evidence at the scene of the altercation, and that Smith provided false information in his police report following the incident.  He further contends Guches, Smith and Cik conspired to fabricate facts about Hubbard's altercation with Christian to convict Hubbard.  Ultimately, however, following a jury trial on September 20, 2011, Hubbard was found not guilty.

Hubbard advances numerous legal claims for relief against the various Defendants.  Hubbard asserts claims under 42 U.S.C. § 1983 for violations of his rights under the United States Constitution, and he advances claims under Montana law.  He seeks both compensatory and punitive damages.

## II.    PROCEDURAL HISTORY

On November 7, 2012, the Defendants each served their first sets of discovery requests on Hubbard.  Hubbard provided his responses, but Defendants found those responses to be inadequate.  Consequently, Defendants filed a motion

requesting the Court compel Hubbard to provide proper responsive answers to their discovery requests.

During the same time frame, Hubbard served his own set of discovery requests on Defendants. Hubbard was similarly dissatisfied with Defendants' discovery responses, so he filed his own motion to compel.

On March 27, 2013, the Court convened a hearing on the parties' motions. During the course of the hearing, the Court found Hubbard's discovery answers were not adequately responsive to the discovery requests in violation of the applicable Federal Rules of Civil Procedure.

During the hearing the Court explained discovery procedures and obligations, including the parties' obligations to supplement their prior discovery responses as required under Fed. R. Civ. P. 26(e). The Court expressly explained several times that if either party failed to provide proper discovery responses, failed to identify documents and witnesses, failed to disclose facts and evidence sought by an opposing party in discovery requests, or failed to supplement prior discovery responses with necessary information, then the Court would impose consequences pursuant to Fed. R. Civ. P. 37(b)(2). Specifically, the Court cautioned that it would preclude the offending party from introducing any facts,

documents, and witness testimony that the party had failed to disclose in discovery, or properly supplement in discovery.

The discovery deadline in this case was April 19, 2013. Following the close of discovery, Defendants filed their Motion for Rule 37 Sanctions. Defendants assert Hubbard completely failed to provide substantive discovery responses as ordered by the Court at the March 27, 2013 hearing. Hubbard never filed a brief in response to Defendants' motion for sanctions.

In the interim, Defendants filed multiple summary judgment motions addressing all of Hubbard's claims for relief. As a result of the Court's rulings on those summary judgment motions, the only claims which now remain for resolution in this case were reduced to the following:

1.  Hubbard's claims under 42 U.S.C. § 1983 alleging Defendants are liable for the fabrication of evidence in violation of Hubbard's due process and equal protection rights under the Fifth and Fourteenth Amendments; and

2.  Hubbard's claims alleging Lincoln County is liable under Montana law for malicious prosecution, negligent and intentional infliction of emotional distress, slander, negligent and intentional spoliation of evidence, "malicious acts and/or omissions", "acting in concert", negligence, and punitive damages based on the conduct of Bowe, Guches, Smith, Rebo, and Ramos.

(Doc. 86 at 40.)

After the summary judgment rulings, the Court then turned to Defendants'

motion for sanctions. On October 17, 2013, the Court conducted a hearing on the

motion, and focused on Defendants' discovery requests that were relevant to the

sole surviving legal claims. The Court reviewed Hubbard's discovery responses

and found the information Hubbard provided was not adequately responsive to

Defendants' discovery requests. (Doc. 93 at 2.)

During the hearing, though, Hubbard represented to the Court that he had

provided Defendants with further supplemental discovery responses after the close

of discovery on April 19, 2013, but before the October 17, 2013 hearing.

Consequently, by Order entered October 22, 2013, the Court afforded Hubbard an

opportunity to file copies of the supplemental discovery materials that he said he

had provided to Defendants, and to file a brief explaining those responses.

## III.  DISCUSSION

### A.  Hubbard's Motion for Recusal

As a threshold matter, I address Hubbard's requests that I recuse or

disqualify myself from further presiding over this action. *In re Bernard*, 31 F.3d

842, 843 (9th Cir. 1994) (concluding that a motion for disqualification "is

addressed to, and must be decided by, the very judge whose impartiality is being

questioned").

Hubbard does not expressly identify the legal authority on which he presents his request for disqualification. But I conclude the motion is properly construed as filed pursuant to 28 U.S.C. § 455.[1]

"Section 455 imposes an affirmative duty upon judges to recuse themselves." *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1983). It provides in relevant part as follows:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party[.]

28 U.S.C. § 455(a) and (b).

---

[1] Alternatively, Hubbard's motion could be construed as filed pursuant to 28 U.S.C. § 144. Section 144 requires, inter alia, that the motion "be accompanied by a certificate of counsel of record stating that it is made in good faith." The certificate of good faith must be provided by a member of the bar, or the movant's counsel of record. *See Robinson v. Gregory*, 929 F. Supp. 334, 337-38 (S.D. Ind. 1996). Consequently, a pro se litigant who has not provided a certificate of good faith from a member of the bar may not employ the disqualification procedures set forth in 28 U.S.C. § 144. *Id. See also Jimena v. UBS AG Bank*, 2010 WL 2650714, *3 (E.D. Cal. 2010) and *United States v. Briggs*, 2007 WL 1364682, *1 (D. Idaho 2007). Here, Hubbard has not provided a certificate of good faith from an attorney in support of his request. Thus, I will not construe his motion as invoking the provisions of section 144.

Section 455(a) requires disqualification for the appearance of partiality.

Section 455(b)(1), in contrast, requires disqualification if a judge has a personal

bias or prejudice for or against a party. *See Hasbrouck v. Texaco, Inc.*, 842 F.2d

1034, 1045 (9th Cir. 1987). Section 455(b)(1) "simply provides a specific example

of a situation in which a judge's 'impartiality might reasonably be questioned'

pursuant to section 455(a)." *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir.

1980) (citing *United States v. Olander*, 584 F.2d 876, 882 (9th Cir. 1978)).

What matters under section 455(a) "is not the reality of bias or prejudice but

its appearance[,]" and the test for disqualification is an objective one. *Liteky v.

United States*, 510 U.S. 540, 548 (1994). Disqualification is warranted if "a

reasonable person with knowledge of all the facts would conclude that the judge's

impartiality might reasonably be questioned." *Blixseth v. Yellowstone Mountain

Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014) (quotation and citation omitted).

The "reasonable person" is not "hypersensitive or unduly suspicious," and "is not

a 'partly informed man-in-the-street[.]'" *Blixseth*, 742 F.3d at 1219, and *United

States v. Holland*, 519 F.3d 909, 913-14 (9th Cir. 2008). Rather, the reasonable

person is a "well-informed, thoughtful observer[,]" and is "someone who

'understand[s] all the relevant facts' and has examined the record and the law."

*Holland*, 519 F.3d at 913-14 (citation omitted).

The analysis under section 455(a) is also subject to the "extrajudicial source" doctrine. *Liteky*, 510 U.S. at 554. The doctrine requires that the basis for disqualification generally must be "something other than rulings, opinions formed[,] or statements made by the judge during the course of trial." *Holland*, 519 F.3d at 913-14. Stated differently, a judge's alleged bias, prejudice, or partiality must be based on knowledge derived from a source outside of any judicial proceedings – some factor other than what the judge learned from his participation in the case. *Liteky*, 510 U.S. at 554; *United States v. Briggs*, 2007 WL 1364682, *2 (D. Idaho 2007) (citing *United States v. Azhocar*, 581 F.2d 735, 739 (9th Cir. 1978)). Ultimately, the analysis under section 455(a) requires a fact-driven consideration of the circumstances of each case. *Holland*, 519 F.3d at 913.

Hubbard asserts two grounds for disqualification. He cites to: (1) allegedly biased statements I made in open court; and (2) judicial rulings I made adverse to Hubbard. For the reasons stated, neither ground warrants my disqualification.

### 1. **"Biased" Statements**

Hubbard asserts I have demonstrated a prejudicial and biased "predetermined opinion" in favor of Defendants' counsel, Gregory Bonilla, and against Hubbard. (Doc. 95 at 15.) He contends that my "actions and words"

expressed during both the March 27, 2013 hearing, and the October 17, 2013 hearing reflect my alleged lack of impartiality.  (Doc. 95 at 15.)

The Court in *Liteky* made clear that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings [...] do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.  Absent an extrajudicial source, a judge's "favorable or unfavorable predisposition" will be characterized as bias or prejudice only "if it is so extreme as to display clear inability to render fair judgment." *Id*., 510 U.S. at 551.  And absent evidence that judicial remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible[,]" a judge's remarks made during the course of litigation proceedings will not compel disqualification.  *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1221 (9th Cir. 2014).

Hubbard relies on three instances of my alleged biased actions and statements which he contends reflect my partiality and "predetermined opinion[s]" about both Hubbard and Bonilla.  I will discuss the three instances in turn.

First, during the March 27, 2013 hearing on the parties' motions to compel, Hubbard argued that Bonilla had "twisted" his description of the parties' discovery

conduct and Hubbard's communications with Bonilla.  But Hubbard argues I

unfairly refused to believe that Bonilla would engage in such "shenanigans."

(Doc. 95 at 15; Doc. 45 at 69-70.)

The transcript of the March 27, 2013 hearing reflects that Hubbard believed

that Bonilla had misled Hubbard as to discovery matters.  (Doc. 45 at 70.)  In

response to Hubbard's attempt to cast Bonilla in a shady light I noted that Bonilla

has "been practicing in this court for a long time, [and] I've never seen him engage

in any shenanigans."  (*Id*.)  Thus, the statement was made in response to

Hubbard's speculative accusations against Bonilla in open court, and were not

made in response to any extrajudicial source of information.  The statement was

not a reflection of a deep-seated degree of favoritism or antagonism impairing my

fair judgment on the discovery matters before me.

Next, Hubbard alleges I inappropriately characterized his conduct during

the March 27, 2013 hearing as "whining."  (Doc. 95 at 15.)  But as reflected in the

transcript of the hearing, my statement was not a mischaracterization of Hubbard's

conduct at the hearing.

The transcript reflects that Hubbard was addressing his motion to compel

and Defendants' failures in refusing to provide discovery responses.  He believed

Defendants were deliberately and strategically delaying production of their

discovery responses, were playing "discovery games," and were misleading Hubbard as to their intent to provide responses. (Doc. 45 at 57 and 64.) I informed Hubbard he could file a second motion to compel, but noted he had not done that. (Doc. 45 at 59-60.) Hubbard thought that since the parties were already before the Court at the March 27, 2013 hearing he did not need to file another motion to compel, and that he could address Defendants' additional alleged failure to respond to his subsequent discovery requests during the March 27, 2013 hearing. (Doc. 45 at 60.)

Hubbard stated he sought Bonilla's cooperation in obtaining discovery responses from Bonilla because he did not "know the rules", and he argued that Bonilla refused to confer with Hubbard to explain to him what Bonilla believed was objectionable about Hubbard's discovery requests. (Doc. 45 at 65-66.) I informed Hubbard that Bonilla was under no obligation to explain the rules to him, or to instruct Hubbard on how to properly phrase discovery requests. (Doc. 45 at 66.)

Hubbard continued to complain about Bonilla's conduct, and he continued to request relief and assistance from the Court in compelling Defendants to answer his subsequent sets of discovery requests despite the fact that he had not filed a motion to compel those discovery responses. He complained about the financial

hardship to which he was subject by traveling to Montana from Minnesota to address discovery matters. (Doc. 45 at 67.) I again informed Hubbard that to obtain relief he had "to abide by the rules[,]" and that "I'm being very patient with you, so don't sit and whine." (Doc. 45 at 67.)

The Court finds that the record and transcript in this case regarding the foregoing discussion speaks for itself. The record establishes that my comments arose from facts and events that occurred during the course of the March 27, 2013 hearing in open court, not from any extrajudicial source. The comment was not formed from a deep-seated favoritism or antagonism.

For his final ground for disqualification, Hubbard suggests that during the October 17, 2013 hearing on Defendants' motion for sanctions I implied that he deserved what Defendants did to him as alleged in Hubbard's pleadings, and that it was Hubbard's own fault, through his own "contentious nature," that Defendants allegedly violated his civil rights. (Doc. 95 at 15.) But Hubbard does not provide a citation to the record where he believes I made these alleged direct or implicit statements. Thus, I cannot directly address the alleged comments. Nonetheless, suffice it to say that Hubbard has failed to identify or present sufficient information revealing a deep-seated favoritism or antagonism that impaired my judgment, or any extrajudicial source for my alleged comments.

## 2.    **Judicial Rulings**

Hubbard also alleges that rulings I have issued in this case adverse to him present grounds for my disqualification. Specifically, he refers to my March 27, 2013 rulings and orders resolving the parties' motions to compel. But Hubbard's assertions in this regard are insufficient.

Under the "extrajudicial source" doctrine, it is well-established that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Judicial ruling could form a basis for disqualification, but only if the rulings "are based on extrajudicial 'knowledge that the [judge] ought not to possess' or 'reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1220 (9th Cir. 2014) (quoting *Liteky*, 510 U.S. at 550, 555). "[O]nly in the rarest circumstances" will judicial rulings "evidence the degree of favoritism or antagonism required [...] when no extrajudicial source is involved." *Liteky*, 510 U.S. at 555.

Again, the record in this case with respect to the motions to compel addressed during the March 27, 2013 hearing speaks for itself. In short, the rulings and orders I imposed against Hubbard were justified based on his unwarranted and unjustified failures in responding to Defendants' discovery

requests, and based on Hubbard's overly broad discovery requests, as discussed at the March 27, 2013 hearing. Hubbard has not identified any extrajudicial source on which my rulings were based, and no such source exists. Further, the rulings do not evidence any degree of favoritism or antagonism warranting my disqualification.

"[J]udges are not to recuse themselves lightly[,]" and should participate in cases assigned if there is no legitimate reason for disqualification. *United States v. Sierra Pacific Industries*, 759 F. Supp. 2d 1198, 1205 (E.D. Cal. 2010) (quoting *United States v. Snyder*, 235 F.3d 42, 45 (1ˢᵗ Cir. 2000)); *Holland*, 519 F.3d at 912. In other words, judges "must not simply recuse out of an abundance of caution when the facts do not warrant recusal. Rather, there is an equally compelling obligation not to recuse where recusal is not appropriate." *Sierra Pacific Industries*, 759 F. Supp. 2d at 1201 (citing *Holland*, 519 F.3d at 912).

Simply put, Hubbard has not established any legitimate basis for my disqualification under either section 455(a) or (b). To find that grounds for disqualification exist under the circumstances presented by Hubbard would be to encourage the misuse of 28 U.S.C. § 455. I have an obligation to not disqualify myself under these circumstances. *See e.g.*, *Hinman v. Rogers,* 831 F.2d 937, 939 (10ᵗʰ Cir. 1987) (explaining that "[a] judge should not recuse himself on

15

unsupported, irrational, or highly tenuous speculation"). Therefore, Hubbard's motion requesting I disqualify myself is denied.

### B. **Constitutionality of Requiring Pro Se Litigant to file Conventionally**

Hubbard challenges the "[c]onstitutionality of not being allowed to file electronically[.]" (Doc. 95 at 13.) As a pro se litigant, he may only file his documents with the Court conventionally. He alleges he was prejudiced by this restriction because it did not afford him as much time as a litigant filing electronically would have had to prepare and file his briefs in response to motions Defendants filed in this case. He complains that because he had to file conventionally, he had to cut his work short to allow sufficient time for his filings to arrive by mail before applicable deadlines expired, whereas if he had been permitted to file electronically he would have had more time to prepare his response briefs and then file his briefs electronically up to end of the deadline. He complains that with respect to certain motions filed by Defendants, he ran out of time, could not finish his response briefs by the applicable filing deadline, and ultimately never did file a response brief because the deadline had passed. He complains that as a consequence, the Court, in some instances, deemed his failure

to file a response brief as an admission that the particular defensive motion was well-taken as permitted under L.R. 7.1(d)(1)(B).[2]

Hubbard does not identify the legal basis for his suggestion that it is unconstitutional to preclude pro se litigants from filing documents electronically. Thus, the Court is left without any specific legal claim to analyze.

Nonetheless, despite any prejudice to which Hubbard alleges he was subject due to the shorter time limitations imposed upon him as a pro se litigant, the Court concludes that as a matter of law Hubbard had available to him an opportunity to seek relief from the perceived prejudice. With respect to briefing deadlines imposed relative to a motion, Fed. R. Civ. P. 6(b) permits a party to move the court, upon a showing of good cause, for an extension of time within which to file a brief. Such motions for extension of time are not uncommon in civil litigation practice before this Court, are often unopposed by the other parties, and are typically found to be supported by good cause. But here, although Hubbard adamantly asserts he was prejudiced by a shorter response brief deadline, Hubbard never moved for an extension of time for filing any of his response briefs as

---

[2]The record in this case reflects, however, that the Court never relied upon L.R. 7.1(d)(1)(B) and Hubbard's failure to file a brief as a conclusive, substantive admission as to the merits of any particular motion. Instead, the Court consistently proceeded to address all motions filed in this case on their merits, and any deemed admission was only a procedural factor given limited consideration by the Court.

permitted under Rule 6(b).  Thus, the Court finds Hubbard's allegations of harm or prejudice due to any unspecified constitutional violation are unfounded, and the Court declines Hubbard's invitation to declare the circumstances of his pro se filing limitations as unconstitutional.

### C. **"Meet and Confer" Obligations and "Good Faith" Certifications**

Hubbard perceives that counsel for Defendants did not satisfactorily engage in the required substantive "meet and confer" conversations relative to both the motion to compel and the instant motion for sanctions.  Suffice it to say, however, that Defendants' motion to compel contained a certification describing the parties' good faith efforts to resolve the discovery dispute without court action as required under Fed. R. Civ. P. 37(a)(1) and L.R. 26.3(c).  (Doc. 31 at 2.)  And Defendants' motion for sanctions contains the requisite certification stating that counsel contacted Hubbard regarding the motion, and that Hubbard opposes the motion, as required by L.R. 7.1(c)(1).  (Doc. 60 at 2.)  Nothing more is required of Defendants.  As explained to Hubbard at the March 27, 2013 hearing, the "meet and confer" requirement may or may not be successful in resolving a discovery dispute.  But the absence of a successful conference does not defeat the party's subsequent motion.

Hubbard further argues that Defendants' present motion for sanctions fails to comply with the "good faith" certification requirement imposed under Fed. R. Civ. P. 37(d)(1)(B).  But for the reasons stated, Hubbard's reliance upon Rule 37 (d)(1)(B) is misplaced as the Rule is inapplicable to Defendants' motion.

Rule 37(d)(1)(B) requires that a party moving for discovery sanctions under Rule 37(d)(1)(A) must include within the motion "a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain [discovery responses] without court action."  Rule 37(d)(1)(A), in turn, provides for discovery sanctions where a party simply "fails to serve" any discovery responses at all.

Here, Defendants' motion is not predicated upon Rule 37(d)(1) because the circumstances of Hubbard's conduct at issue do not involve a complete failure on his part to provide any discovery responses at all.  Instead, Defendants' motion is based on Hubbard's asserted insufficient compliance, or noncompliance, with the Court's Rule 37(a) rulings and orders issued during the March 27, 2013 hearing compelling him to produce further discovery responses.  Thus, Defendants' motion for sanctions is presented under authority of Rule 37(b) for failure to comply with an order under Rule 37(a), and Rule 37(b) does not impose a "good faith" certification requirement like that which is imposed under Rule 37(d)(1)(B).

The absence of such certification, therefore, does not defeat Defendants' motion for sanctions filed under Rule 37(b).

**D.  Scope of Motion to Compel, Order to Compel, and the Resulting Sanctionable Conduct**

As noted, Hubbards' remaining claims are limited to his fabrication claims under 42 U.S.C. § 1983, his claims alleging Lincoln County is liable under Montana law, and his claims for the resulting damages.  But Hubbard argues that Defendants' discovery requests directed at those specific claims were not at issue in Defendants' motion to compel, and were not addressed during the March 27, 2013 hearing on the motion to compel.  He believes the scope of the hearing was limited to a discussion of Hubbard's responses to Defendants' contention interrogatories, and to their interrogatories seeking the identification and location of certain witnesses.  He also contends the Court's orders and directives issued during the March 27, 2013 hearing did not order him to provide discovery responses to the specific discovery requests directed at Hubbard's remaining claims.  The Court concludes, however, that Hubbard is mistaken.

Defendants' motion to compel was directed at all of the discovery requests they served on Hubbard on November 7, 2012.  (Doc. 31 at 2.)  Defendants supported their motion with copies of all of Defendants' first sets of discovery

requests, together with Hubbard's answers to those requests. (Docs. 32-1 through 32-7, and 32-9 through 32-11.) Defendants requested an order compelling Hubbard to "respond meaningfully to the discovery propounded." (Doc. 32 at 12.) Although some of the arguments in Defendants' brief focused on only certain discovery requests and responses, Defendants did so only because there were "simply too many deficiencies in Plaintiff's responses to address each deficiency within the confines of" their brief. (Doc. 32 at 5.) So, Defendants focused on "representative examples of Plaintiff's [deficient] responses[.]" (*Id*.) But undisputably, the subject of the arguments in Defendants' motion to compel and brief encompassed the full scope of all of Defendants' discovery requests.

During the hearing counsel for Defendants expressly argued that none of Hubbard's discovery responses provided substantive and responsive information. But in lieu of taking time to address each and every discovery request during the hearing, counsel focused on Defendants' contention interrogatories.

Nonetheless, Defendants' discovery requests went beyond mere contention interrogatories. They also requested Hubbard "state all facts" which support his contentions, and to "identify by name, address, and telephone number, all persons you believe have knowledge which supports your answers" to the other specific interrogatories. (*See e.g.* Doc. 32-2 at 6 (Interrogatory No. 8), Doc. 32-4 at 4, 6

21

(Interrogatory Nos. 4 and 9), and Doc. 32-7 at 2, 6 (Interrogatory Nos. 2 and 12).)

Defendants' interrogatories also requested Hubbard identify documents he

believed supported his responses to the discovery requests, and Defendants'

discovery requested Hubbard produce the documents he identified.

Additionally, although some of the discussion during the March 27, 2013

hearing on Defendants' motion to compel focused on Hubbard's inadequate

responses to Defendants' contention interrogatories and their interrogatories

requesting the identification of witnesses, the substance of the hearing, as a whole,

was not so limited.  The Court provided broader instructions to Hubbard with

respect to all of the discovery requests.  The Court informed Hubbard that his

discovery responses have to be "comprehensive", i.e. "if it's an individual's

testimony, you have to identify the individual and summarize what that individual

will testify to.  If it's a document, you have to identify the document.  If it's a

video, you identify the video."  (Doc. 45 at 137.)  And with respect to Defendants'

requests for production, the Court informed Hubbard he must produce all

documents/tangible items within his possession if they are the subject of any

specific request for production.  "In other words, if a document you have fits

within any of the requests for production that were served upon you by the

Defendant, it fits within those requests, [...] and it wasn't produced, you can't use it." (Doc. 45 at 30, and Doc. 96-2 at 2.)

Also, during the March 27, 2013 hearing – as a representative example of Hubbard's deficient discovery responses – the Court addressed Defendant Roby Bowe's Request for Production No. 1, and Hubbard's response to the request. (Doc. 45 at 26-28.) Request for Production No. 1 requested Hubbard "produce a copy of any document or electronically stored information identified in answer to Interrogatory No. 10." (Doc. 32-1 at 8.) Hubbard's answer to the request stated, in part, that "[a]ll documents and Electronically Stored Information is in the custody of the defense." (*Id.*) The Court explained to Hubbard that his response was inadequate because the response (1) did not identify specific documents as required, and (2) did not disclose to Defendants the identity of any documents that Hubbard might have within his own possession that he may want to use at trial. (Doc. 45 at 27-28.)

Thus, the record reflects that Defendants' motion to compel, the March 27, 2013 hearing, and the Court's rulings and orders were directed at all of Defendants' first sets of discovery requests served on Hubbard on November 7, 2012.

On October 17, 2013, the Court conducted a hearing on Defendants' motion for sanctions. During the hearing the Court reviewed Hubbard's discovery responses relative to his sole remaining claims and found those answers were not adequately responsive to Defendants' discovery requests. (Doc. 93 at 2.)

During the hearing, Hubbard informed the Court he had provided Defendants with several supplemental discovery responses between the close of discovery on April 19, 2013, and the hearing on October 17, 2013. Consequently, by Order entered October 22, 2013, the Court ordered Hubbard to file copies of the referenced supplemental discovery responses. But the Court directed Hubbard to file only those supplemental responses that were relevant to Hubbard's: (1) fabrication claim under 42 U.S.C. § 1983, and (2) claims for compensatory damages. (Doc. 93 at 3.) The Court also ordered Hubbard to file a brief "explaining precisely how the supplemental materials are responsive" to the discovery requests that Defendants directed at Hubbard's sole remaining claims. (Doc. 93 at 3.)

### E. Adequacy of Hubbard's Supplemental Discovery Responses

In Hubbard's brief filed in response to the Court's October 22, 2013 Order he discussed his supplemental discovery responses relative to both his fabrication claims and damage claims. With respect to the fabrication claims, Hubbard relies

only upon the supplemental discovery responses that he provided to Defendants on April 15, 2013, in response to Defendant Travis Smith's discovery requests (doc. 95-16), and the supplemental discovery responses he provided to Defendants on April 19, 2013, in response to Defendant Roger Guches' discovery requests (doc. 95-17).

But the discovery responses Hubbard now relies upon are the same discovery responses that were before the Court as of the October 17, 2013 hearing. (Doc. 95-16 at 46-50 (discovery responses dated April 15, 2013), and Doc. 95-17 at 48-50 (discovery responses dated April 19, 2013).) Specifically, they are Hubbard's responses to Defendant Travis Smith's Interrogatories 3, 4, 5, 9, and 10, and Smith's Requests for Production 1 and 2, and responses to Defendant Roger Guches' Interrogatories 4 and 7. As of the time of the hearing, though, the Court had already reviewed those discovery responses and concluded they "were not adequately responsive to the discovery requests." (Doc. 93 at 2.)

Despite Hubbard's representations to the Court at the October 17, 2013 hearing stating that he had provided Defendants with further supplemental discovery responses after April 19, 2013, Hubbard has neither filed, nor identified any further supplemental responses relevant to his fabrication claims. (*See* doc. 95 at 12-13.) Thus, the Court's prior conclusion stands – Hubbard failed to comply

with the Court's March 27, 2013 order compelling discovery responses relative to his fabrication claims.

With respect to Defendant Lincoln County's discovery requests directed at Hubbard's claims for damages, Hubbard cites to the same supplemental discovery responses that he provided to Defendant Lincoln County on April 19, 2013.  Those requests and responses are as follows:

INTERROGATORY NO. 15: Please state with specificity all elements of damages claimed by you, the amounts of damages so claimed, and the basis upon which said damages were determined.

ANSWER: DAMAGES EXPERT NOT RETAINED. PREMATURE TO CLAIM EXACT DAMAGES UNTIL THEY ARE ASSESSED. BASIS FOR ALL DAMAGES IS A QUESTION OF LAW. In addition, damages will be shown by the judgments that came about due to the malicious prosecution, the loss of business income in having to defend the action, the loss of business contacts due to the slander and defamation, and punitive damages for malicious acts of the defendants.

INTERROGATORY NO. 16: Please identify by name, address, and telephone number, all persons you believe have knowledge which supports your answer to Interrogatory No. 15.

ANSWER:  ALREADY ANSWERED.

INTERROGATORY NO. 17: Please identify, including its location and custodian, any document or electronically stored information (including any writings, drawings, graphs, charts, photographs, audio recordings, images, or any other data or data compilations) or any tangible thing which you believe supports your answer to Interrogatory No. 15.

ANSWER: ALREADY ANSWERED. NO EXPERT HAS BEEN RETAINED, THEREFORE NO DATA TO DISCOVER UNTIL IT IS DONE.

REQUEST FOR PRODUCTION NO. 4: Please produce a copy of any document or electronically stored information identified in answer to Interrogatory No. 17.

RESPONSE: NOTHING THAT IS NOT ALREADY IN THE HANDS OF THE DEFENDANTS or that hasn't been produced yet from agencies.

REQUEST FOR PRODUCTION NO. 5: Please produce for inspection at a mutually agreeable time and place any tangible thing identified in answer to Interrogatory No. 17.

RESPONSE: NOTHING TANGIBLE TO INSPECT AT THIS TIME.

REQUEST FOR PRODUCTION NO. 6: Please produce your income tax returns for tax years 2007 through 2012.

RESPONSE: Have sent request to two ex accountants, and have not received it back yet. When I receive, I will turn over.

(Doc. 95-13 at 1-2; Doc. 61-1 at 57-58.)

Again, the Court had reviewed these discovery responses as of the time of the October 17, 2013 hearing, and concluded they "were not adequately responsive to the discovery requests." (Doc. 93 at 2.) Furthermore, Defendants advise that with respect to Lincoln County's Request for Production No. 6, Hubbard never produced copies of his tax returns. (Doc. 96 at 5.)

Hubbard next cites to limited information that Defendants already knew about Hubbard's damages. But he only refers to the witnesses who Defendants already knew had knowledge of Hubbard's damages: himself, his son Christian, and his daughter Shayna. (Doc. 95 at 10-11.) Those references do not provide Defendants with any information about Hubbard's damages.

Hubbard also refers to civil judgments imposed against him as evidence on which he would rely in support of his claims for damages. (Doc. 95 at 11.) (*See* Doc. 95-14 at 9-10, and Doc. 95-15.) Hubbard notes that Defendants already possessed copies of those judgments. But significantly, Hubbard's discovery responses do not, in any way, describe how the referenced civil judgments represent actual damages he sustained as a result of any of the Defendants' acts or omissions alleged in this action. Hubbard's mere reference to existing judgments, without more, is insufficient.

Next, Hubbard references bank account statements on which he intended to rely in support of his claims for damages. (Doc. 95 at 11.) On April 19, 2013, he informed Defendants' counsel that he intended to rely on certain unidentified bank statements. (Doc. 95-6.) But Hubbard did not produce copies of those bank statements at that time. In fact, Hubbard admits he did not provide Defendants with copies of the bank statements until October 28, 2013, after the October 17, 2013 hearing. (Doc. 95-8.) And Hubbard did not provide any information to Defendants as to how those bank statements represented or reflected damages Defendants allegedly caused him to sustain.

Despite Hubbard's representations to the Court during the October 17, 2013 hearing, Hubbard did not identify any further supplemental discovery responses

28

that he had provided to Lincoln County between April 19, 2013, and the October 17, 2013 hearing relative to his claims for damages. Instead, in response to the Court's October 22, 2013 Order, Hubbard identifies supplemental responses that he provided on October 25, 2013, after the hearing. (Doc. 95-9.) They are supplemental responses to Defendant Lincoln County's discovery requests directed at his claims for damages – Interrogatories 15, 16, 17, and Requests for Production 4 and 5.

The Court finds that Hubbard's supplemental responses provided on October 25, 2013, are untimely. During the March 27, 2013 hearing, the Court directed Hubbard to provide discovery responses by the close of discovery on April 19, 2013. As noted above, the responses Hubbard provided by that date were insufficient. But since Hubbard represented to the Court that he had further supplemented his responses, the Court afforded him an opportunity to file those supplemental responses with the Court for its review. Contrary to Hubbard's representations to the Court, the record now reflects that he did not provide any supplemental responses to Defendants until October 25, 2013, after the hearing and six months after the close of discovery. Hubbard's misrepresentations to the Court, and his untimely supplemental responses, violate the Court's orders and

directives compelling Hubbard to produce timely, and responsive discovery information.

Based on the forgoing, the Court concludes Hubbard's supplemental discovery responses do not satisfy his obligations to comply with the Court's March 27, 2013 rulings and orders on Defendants' motions to compel. Thus, Hubbard has violated the Court's Rule 37(a) order compelling discovery and is subject to sanctions under Rule 37(b).

### F. Imposition of a Sanction

If a party "fails to obey an order to provide or permit discovery, [...] the court [...] may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A).[3] Included among the available sanctions are orders "dismissing the action or proceeding in whole or in part[.]" Fed. R. Civ. P. 37(b)(2)(A)(v). The district court has discretion in its imposition of discovery sanctions. *Insurance Corp. of Ireland, Ltd., v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). Case-dispositive or terminating sanctions generally are available in limited circumstances. *Connecticut General Life Insurance Co. v. New Images of Beverly*

---

[3]This Court's rulings and orders imposed during the March 27, 2013 hearing on Defendants' motion to compel generally directing Hubbard to respond to Defendants discovery requests are sufficiently specific to constitute an "order to provide or permit discovery." *See Fjelstad v. American Honda Motor Co., Inc.*, 762 F.2d 1334, 1339 (9th Cir. 1985).

*Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).  Only "willfulness, bad faith, and fault"
justify a severe sanction.  *Id.*

Here, Hubbard has had extensive time and opportunities to comply with the
Court's orders compelling him to produce adequately responsive discovery
information.  The Court explained to Hubbard, during the March 27, 2013 hearing,
what he needed to do to properly respond to discovery requests, and the Court
afforded Hubbard both an opportunity to respond to discovery requests, and an
extended period of time to file his supplemental discovery responses with the
Court for its review.  But Hubbard inexplicably failed to comply with the Court's
instructions.  Specifically, Hubbard did not provide supplemental discovery
responses relative to his claim for damages until October 25, 2013, despite
representing to the Court on October 17, 2013, that he had provided adequate
supplemental discovery responses prior to the hearing.  Hubbard has elected not to
comply with the Court's orders, and the Court finds Hubbard's unexplained and
unjustified conduct has been willful.  "'[D]isobedient conduct not shown to be
outside the control of the litigant' is all that is required to demonstrate willfulness,
bad faith, or fault."  *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 948 (9th Cir.
1993).

Next, before a court can order a dispositive sanction for a failure to comply with an order to compel discovery, the court must first consider five factors and conclude that the factors weigh in favor of the dispositive sanction requested. The court must consider:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012) (quotations and citation omitted). These five "factors are 'not a series of conditions precedent before the judge can do anything,' but are a 'way for a district judge to think about what to do.'" *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1226 (9th Cir. 2006) (quoting *Valley Engineers, Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)).

Consideration of these factors as discussed below compels the Court's conclusion that a dismissal of this action is warranted.

### a.   Expeditious Resolution

"[T]he public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). The district courts are in a superior position to evaluate this factor and to

determine when a particular delay interferes with the public's interests. *Id*. (citing *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984)).

Under the circumstances, this factor weighs in favor of dismissing this case. Hubbard commenced this action on March 15, 2012. The scheduling order which established deadlines for disposition of the claims was imposed August 12, 2012, and discovery was set to close by April 19, 2013. Significant time has passed without proper discovery responses provided by Hubbard. At this juncture, given the passage of time, Hubbard's significant delays and failures in producing discovery responses, and his failure to comply with the Court's Orders, the Court finds that an expeditious resolution of this matter is in the public's interest.

### b.     Docket Management

Again, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Yourish*, 191 F.3d at 990). Litigants who do not actively pursue their claims or obey the court's orders disrupt the court's handling of other matters by consuming time and resources needed by other litigants who are active and compliant. *See Pagtalunan*, 291 F.3d at 642. The court must be able to "manage its docket without being

subject to routine noncompliance of litigants[.]" *Id.* (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

Hubbard has demonstrated his inability or unwillingness to comply with the Court's Orders. Thus, in the interest of judicial economy, the Court's time is better spent on cases in which the litigants are compliant. Therefore, this factor weighs in favor of dismissal.

### c. Prejudice to Defendants

"To prove prejudice, a defendant must establish that plaintiff's actions impaired defendant's ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Pagtalunan*, 291 F.3d at 642 (citing *Malone v. United States Postal Service*, 833 F.2d 128, 131 (9th Cir. 1987)). Although there are inherent delays in the normal course of litigation, a party's "unreasonable" delay and noncompliance can cause prejudice to the opposing party. *Id.* The law presumes that an unreasonable delay has caused prejudice to the opposing party. *In re Phenylpropanolamine*, 460 F.3d at 1227-28.

Defendants assert they are prejudiced by the absence of properly responsive discovery information from Hubbard. They assert it has impeded their ability to prepare their defense against Hubbard's claims. The Court agrees Defendants have been prejudiced in that regard. Prejudice is inherent in the delay caused by

34

Hubbard's failure to provide discovery information, and the staleness of the information he untimely provided. *See Pagtalunan*, at 643 (finding that stale evidence and faded memories prejudice the litigation).

### d. <u>Less Drastic Alternatives</u>

A court is obligated to consider the impact of a dismissal as a sanction, and the adequacy of less drastic sanctions. *In re Phenylpropanolamine*, 460 F.3d at 1228 (citing *Malone*, 833 F.2d 131-32). A court's "[w]arning that failure to obey a court order will result in dismissal can itself meet the 'consideration of alternatives' requirement." *Id*. at 1229 (citations omitted).

The Court has already provided Hubbard several opportunities to identify proper discovery responses that he provided, and during the March 27, 2013 hearing the Court cautioned Hubbard of the consequences of failing to produce responsive discovery information, i.e. that the Court would preclude the presentation of certain evidentiary matters. Here, since Hubbard failed to provide timely information regarding alleged damages he sustained, he would be precluded from presenting any undisclosed damages information at trial which, in turn, precludes Hubbard from sustaining any of his causes of action. Additionally, absent discovery responses from Hubbard describing evidence of the alleged specific conduct in which Defendants engaged in actually fabricating evidence

against Hubbard, he cannot sustain his fabrication claims. Thus, as a practical matter, less drastic sanctions would be tantamount to a dismissal. The Court is not required to exhaust all alternative less-drastic sanctions prior to dismissal. *Nevijel v. North Coast Life Insurance Co.*, 651 F.2d 671, 674 (9th Cir. 1981).

Finally, by Order entered April 12, 2012, the Court cautioned Hubbard that this action would be subject to dismissal if he failed to comply with orders of the Court. (Doc. 4 at 8.) Therefore, in consideration of whether other less drastic alternative sanctions should be imposed, the Court concludes dismissal is appropriate.

### e. <u>Disposition on the Merits</u>

Finally, public policy favors the disposition of cases on their merits. *Pagtalunan*, 291 F.3d at 643 (citing *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)). Regardless of the circumstances of any particular case, this factor will always counsel against dismissal.

## IV. <u>CONCLUSION</u>

Based on the forgoing, IT IS HEREBY ORDERED that Hubbard's motion requesting that I disqualify myself is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Rule 37 Sanctions is GRANTED. Having considered and weighed all of the relevant

factors, the Court concludes the factors weigh in favor of dismissal, and this action is DISMISSED.

DATED this 31st day of March, 2014.

_____
Jeremiah C. Lynch
United States Magistrate Judge